[Civ. No. 34572. First Dist., Div. Four. Nov. 13, 1974.]

ABE BLUMENFELD et al., Plaintiffs and Appellants, v.
SAN FRANCISCO BAY CONSERVATION AND DEVELOPMENT
COMMISSION, Defendant and Respondent.

**COUNSEL**

P. M. Barceloux, Burton J. Goldstein, Albert E. Levy, Ralph Golub, Keith S. Humpherys, Ronald E. Stewart, Goldstein, Barceloux & Goldstein and M. Reed Hunter for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, Robert H. O'Brien, Assistant Attorney General, Nicholas C. Yost and E. Clement Shute, Jr., Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**EMERSON, J.**\*—Appellants Blumenfeld, et al., doing business as Bayview Properties, were first contacted by respondent, San Francisco Bay Conservation and Development Commission (hereinafter respondent or BCDC) by letter under date of October 7, 1969, with reference to reports that appellants had been engaged in filling of areas subject to tidal action from Richardson Bay. An application by appellants to fill and improve certain marsh properties in the vicinity of Richardson Bay was submitted to respondent on May 11, 1970. A petition in support of this application was submitted on August 30, 1971; the petition essentially asserted that respondent was without jurisdiction over the subject property or, in the alternative, that respondent should grant permission for appellants' requested activities. Respondent, by letter of July 13, 1972, informed appellants of its denial of their application after having found that appellants' project was within the jurisdiction of BCDC.

On October 2, 1972, appellants filed a petition for writ of review, or mandamus, or injunction in the San Francisco Superior Court. Respondent filed its demurrer and answer thereto, to which appellants filed a reply memorandum. The court ruled that the petition was in mandamus (Code Civ. Proc., § 1094.5) and sustained respondent's demurrer without leave to amend. Judgment of dismissal was entered on October 30, 1973. The appeal is from the judgment.

Appellants sought a permit from BCDC to fill for commercial purposes 1.45 acres of property located between Sycamore Avenue on the southwest, U.S. Highway 101 on the east and by an undeveloped hillside on the north. Of this property, 0.25 acre was marshland.[1]

A culvert connected the property with property on the other side of U.S. 101. During the rainy season, the drainage pattern was from adjoining hills through this culvert under U.S. 101, across the property and out a second culvert (hereinafter referred to as the culvert), which was constructed under Sycamore Avenue and connected the property with Richardson Bay. This latter culvert was installed in about 1962 when the street was regraded and paved. A floodgate had originally been attached to the culvert but, at some unknown time, had been removed.

---

\*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

[1]The 1.45 and 0.25 figures are ascertained from the documents incorporated by reference in appellants' petition to the court. Although irrelevant for purposes of the legal issues raised on appeal, the record suggests that BCDC found that approximately 3.0 acres of marshland could be filled.

Waters occasionally reached the property via the culvert during high tide at certain seasons. During the peak of the rainy season, the property had been subject to flooding resulting from tidal waters which entered through the culvert and from waters which drained off adjacent hillsides.

The property had been separated from San Francisco Bay by Sycamore Avenue which was built on a nine-foot levee. This street had prevented the property from being visible from the bay; the property was inaccessible to users of the bay.

The court sustained the demurrer without leave to amend on the ground that BCDC had jurisdiction over appellants' property pursuant to Government Code section 66610, subdivision (a).

Appellants' main contention is that their property does not come under the jurisdiction of BCDC because the property is subject to tidal waters *only* because the "man-made" culvert allows the water onto the property. The basic reasoning behind this assertion is that Government Code section 66610, subdivision (a), contemplates BCDC jurisdiction over areas subject only to "natural" tidal action, not areas such as appellants' property which is affected by tidal waters because a man-made culvert allows the waters to come under Sycamore Avenue, and onto the property.

Government Code section 66610 provides in part: "For the purposes of this title, the area of jurisdiction of the San Francisco Bay Conservation and Development Commission includes: (a) San Francisco Bay, being all areas that are subject to tidal action from the south end of the bay to the Golden Gate (Point Bonita-Point Lobos) and to the Sacramento River line (a line between Stake Point and Simmons Point, extended northeasterly to the mouth of Marshall Cut), including all sloughs, and specifically, the marshlands lying between mean high tide and five feet above mean sea level; tidelands (land lying between mean high tide and mean low tide); and submerged lands (land lying below mean low tide)."

Appellants cite cases where courts of this jurisdiction and others have interpreted the word "tideland" to mean lands that are affected in their natural state by the ebb and flow of the tide. But section 66610 uses the language ". . . all areas that are subject to tidal action . . . and specifically, the marshlands . . . tidelands . . . and submerged lands . . ." Thus, whatever has been the meaning of tidelands cannot be the sole meaning of "areas subject to tidal action." Section 66610 is not limited merely to tidelands as appellants seem to imply.

Nothing in the legislative history provides any indication of what the Legislature intended by the language "subject to tidal action" when it adopted the McAteer-Petris Act of 1965 (Gov. Code, § 66600 et seq.). ■ However, in analyzing the legislative usage of certain words, " 'the objective sought to be achieved by a statute as well as the evil to be prevented is of prime consideration. . . .' " (*People* ex rel. *S. F. Bay etc. Com.* v. *Town of Emeryville* (1968) 69 Cal.2d 533, 543 [72 Cal.Rptr. 790, 446 P.2d 790] (hereinafter *Town of Emeryville*).)

It is quite plain from reading the preamble of the act that the Legislature determined that the San Francisco Bay was of utmost importance to the area as a natural resource and should be closely regulated as to the development thereof.[2] The Supreme Court has recognized the importance given to the bay by the enactment of the act. (*Town of Emeryville, supra,* 69 Cal.2d at pp. 544-545; see also *Candlestick Properties, Inc.* v. *San Francisco Bay Conservation etc. Com.* (1970) 11 Cal.App.3d 557, 564-565 [89 Cal.Rptr. 897] (hereinafter *Candlestick Properties*).)

In looking at the importance placed upon the regulation of development of the bay by the Legislature, there seems to be no reason why the Legislature would have limited the language "subject to tidal action" to the interpretation contended by appellants. ■ Appellants' property was subject to tidal action; and merely because this occurred as the result of waters flowing through a culvert should not defeat the intent of the Legislature

---

[2]The preamble of the McAteer-Petris Act provides as a declaration of public interest: "The Legislature hereby finds and declares that the public interest in the San Francisco Bay is in its beneficial use for a variety of purposes; that the public has an interest in the bay as the most valuable single natural resource of an entire region, a resource that gives special character to the bay area; that the bay is a single body of water that can be used for many purposes, from conservation to planned development; and that the bay operates as a delicate physical mechanism in which changes that affect one part of the bay may also affect all other parts. It is therefore declared to be in the public interest to create a politically-responsible, democratic process by which the San Francisco Bay and its shoreline can be analyzed, planned, and regulated as a unit." (Gov. Code, § 66600.)

In the next section, the Legislature emphasizes the dangers of unregulated fill activities: "The Legislature further finds and declares that uncoordinated, haphazard filling in San Francisco Bay threatens the bay itself and is therefore inimical to the welfare of both present and future residents of the area surrounding the bay; that while some individual fill projects may be necessary and desirable for the needs of the entire bay region, and while some cities and counties may have prepared detailed master plans for their own bay lands, a governmental mechanism must exist for evaluating individual projects as to their effect on the entire bay; and that further piecemeal filling of the bay may place serious restrictions on navigation in the bay, may destroy the irreplaceable feeding and breeding grounds of fish and wildlife in the bay, may adversely affect the quality of bay waters and even the quality of air in the bay area, and would therefore be harmful to the needs of the present and future population of the bay region." (Gov. Code, § 66601.)

that BCDC should have jurisdiction over the unregulated filling of appellants' marshland property. (See Gov. Code, § 66605, subd. (d).)

Appellants contend, however, that section 66610 should be strictly construed because the grant of power given to BCDC therein enables BCDC to interfere with the exercise of fundamental rights, including property rights. Yet, it is a principle of statutory construction that where administrative powers are granted for effectuating a broad regulatory program of importance similar to the McAteer-Petris Act a liberal interpretation may be proper. (See 3 Sutherland, Statutory Construction (4th ed. 1974) § 65.03, p. 163.) It has also been stated that laws providing for the conservation of natural resources are of great public and remedial importance and thus, are given a liberal construction. (3 Sutherland, Statutory Construction, *supra*, § 71.14, p. 365.)

Appellants support this contention of strict construction by arguing that eminent domain statutes are to be strictly construed and combine this argument with an assertion that vested rights are involved in this matter. The eminent domain argument is irrelevant to the question of whether or not BCDC has jurisdiction over appellants' property; it goes more to a question of what effect BCDC's denial of appellant's application has on the value of the property. That question is not before the court on appeal. The merits of the vested rights argument likewise cannot be sustained. ■ Acquisition of vested rights assumes substantial reliance upon required permits. (See *Russian Hill Improvement Assn.* v. *Board of Permit Appeals* (1967) 66 Cal.2d 34, 39 [56 Cal.Rptr. 672, 423 P.2d 824]; *California Central Coast etc. Conservation Com.* v. *McKeon Constr.* (1974) 38 Cal.App.3d 154 [112 Cal.Rptr. 903].) Nothing in the record suggests that appellants had a permit to fill the subject property, before the creation of BCDC.

■ Appellants also argue that their "natural" tidal action theory is supported by the fact that the subject property was not shown on plan maps of the San Francisco Bay Plan as issued in 1969. However, these maps were not required for jurisdictional purposes. As part of the overall plan, they were to be made so that proposed uses of certain areas could be planned on a long-range basis. (Gov. Code, §§ 66602, 66611, and 66652.) The areas over which BCDC has jurisdiction are described solely in section 66610; the sections in the statutory scheme describing the plan maps have nothing to do with BCDC's jurisdiction.

■ Appellants' property was "subject to tidal action" before Sycamore Avenue was built in 1962 and has remained "subject to tidal action" at all

times afterwards, even if by virtue of a culvert under the street. Thus, the property was subject to the jurisdiction of BCDC pursuant to Government Code section 66610.

Respondent BCDC has effectually implemented section 66610 by enacting regulation No. 10132 (Cal. Admin. Code, tit. 14, § 10132), which interprets the language "subject to tidal action" as follows: "(a) 'Subject to tidal action' means: touched by tidal waters at any stage of the tide at any time on or subsequent to September 17, 1965, excluding however: (1) Areas not touched by tidal waters on September 17, 1965, and touched by tidal waters thereafter as the result of natural destruction of man-made works, provided that such exclusion shall be effective only for a period of one year from the initial such touching by tidal waters, or for such longer period as may be specified by Commission resolution based upon its finding that repairs of the destruction could not physically be completed within one year. (2) *Areas that could, on and at all times subsequent to September 17, 1965, have been removed from being touched by tidal waters by simply closing a functioning tidal gate.* (b) Areas once subject to tidal action (as defined in paragraph (a)) remain subject to the same Commission jurisdiction even if filled pursuant to Commission permit." (Italics added.)

Appellants concede that their property is touched by tidal waters during the rainy season; in addition, there is no indication that a functioning tidal gate existed after September 17, 1965. Under this regulation, there can be no doubt that appellants' property was subject to the jurisdiction of BCDC.

Appellants next urge that BCDC's regulation No. 10132 (Cal. Admin. Code, tit. 14, § 10132) should be invalidated as being inconsistent with Government Code section 66610.

Appellants argue that the regulation is an interpretative ruling that does not bind the court. They further contend that the ruling is invalid because it contravenes the "natural" tidal action theory espoused by appellants.

■ Administrative regulations have been analyzed as being interpretative if they construe an enabling statute (see 1 Davis, Administrative Law Treatise (1958) §§ 5.03, 5.04). Regulation No. 10132 is of this type of regulation. Although not bound by these regulations, courts may still choose nonetheless to follow them. (1 Davis, Administrative Law Treatise, *supra,* §§ 5.03, 5.04.) ■ If, however, the regulation alters a statute or impairs its scope, it should be invalidated by a reviewing court. (*Morris* v. *Williams* (1967) 67 Cal.2d 733, 748 [63 Cal.Rptr. 689, 433 P.2d 697].)

Nevertheless, if the regulation is not inconsistent with the enabling statute, it is entitled to great weight by the courts. (*Morris* v. *Williams, supra,* at p. 748; *Metzenbaum* v. *City of Carmel-By-The-Sea* (1965) 234 Cal.App.2d 62, 63 [44 Cal.Rptr. 75].)

The regulation in question is not inconsistent with Government Code section 66610; it merely is an effort by BCDC to provide a working definition that those areas which were not touched by tidal waters after the effective date BCDC was established (Sept. 17, 1965) were not to be under the jurisdiction of BCDC. The regulation additionally provides that those areas where a *functioning* tidal gate existed on or after that date were, in effect, removed from San Francisco Bay and therefore were not subject to the commission's regulatory powers. This is not inconsistent with the broad purposes of the McAteer-Petris Act (see Gov. Code, §§ 66600-66606.6). The regulation reasonably effectuates the act and should not be invalidated. (See Gov. Code, § 11374.)

Appellants argue that the regulation acts as a denial of equal protection insofar as it prescribes an artificial and arbitrary classification of those whose property will be subject to BCDC's jurisdiction on the basis of whether or not they had a functioning tidal gate. The question which must be asked is whether the regulation is rationally related to a legitimate purpose. (*Brown* v. *Merlo* (1973) 8 Cal.3d 855, 861 [106 Cal.Rptr. 388, 506 P.2d 212]; 5 Witkin, Summary of Cal. Law (8th ed. 1974) Constitutional Law, § 341, pp. 3635-3637.) Appellants' argument cannot be sustained; the regulation sets up a rational test distinguishing those whose property has a *functioning* tidal gate which could close off the bay and those that do not. The purpose of the McAteer-Petris Act was to set up BCDC to have powers to regulate the conservation and development of the bay as a natural resource (Gov. Code, §§ 66600-66606.6; see also *Town of Emeryville, supra,* 69 Cal.2d at pp. 543-545; *Candlestick Properties, supra,* 11 Cal.App.3d at pp. 564-565). To assert jurisdiction over those areas where no functioning tidal gate exists to close off the bay's tidal waters rationally relates to the purpose of BCDC.

Appellants claim as an alternative argument that the regulation does not require for exemption that a tidal gate actually be attached to their culvert but merely that their property *could* have been removed from tidal water impact by closing a functioning tidal gate. They further assert that their property meets this standard because it could have been removed from tidal waters had there been a functioning gate.

 A court is to interpret a regulation as it would a statute and is to construe it in light of the enabling statute's intendment. (1A Sutherland, Statutory Construction (4th ed. 1972) § 31.06, pp. 361-362.) Appellants' argument must fail; it is obvious from the language "functioning" that the regulation is intended to exclude from BCDC's jurisdiction only those areas where a gate *in fact* existed at the time BCDC was created by the Legislature. Appellants' construction of this regulation cannot be reconciled with the legislative intent of the McAteer-Petris Act.

Appellants' property was subject to tidal action even though by virtue of a culvert. Furthermore, there is no indication that a functioning tidal gate was appended to this culvert after 1965 which could have closed off the tidal waters from reaching appellants' property. Thus, BCDC properly has jurisdiction over appellants' property.

The judgment is affirmed.

Rattigan, Acting P. J., and Christian, J., concurred.

A petition for a rehearing was denied December 5, 1974, and appellants' petition for a hearing by the Supreme Court was denied January 8, 1975.