[No. A029366. First Dist., Div. Four. Dec. 31, 1986.]

THE PEOPLE ex rel. SAN FRANCISCO BAY CONSERVATION AND
DEVELOPMENT COMMISSION, Plaintiff and Respondent, v.
GEORGE GIANULIAS et al., Defendants and Appellants;
CITY OF VALLEJO et al., Interveners and Appellants.

COUNSEL

James F. Moelk, O'Hara & Moelk, John D. O'Hara and Harrison, Comisky & O'Hara for Defendants and Appellants.

John M. Powers, City Attorney, Bernard J. Favaro and Favaro, Lavezzo, Gill, Caretti & Heppell for Interveners and Appellants.

John K. Van de Kamp, Attorney General, Andrea Sheridan Ordin, Chief Assistant Attorney General, N. Gregory Taylor, Assistant Attorney General, and Joseph C. Rusconi, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

CHANNELL, J.—After appellants George Gianulias and Revolting Development, Inc. began to fill their inundated Solano County land, respon-

dent San Francisco Bay Conservation and Development Commission (BCDC) filed a complaint for injunctive relief and civil penalties. Appellants City of Vallejo (City) and Vallejo Sanitation and Flood Control District (District) intervened in the action. The trial court enjoined further filling without a permit and fined Gianulias. Gianulias, Revolting Development, the City, and the District appeal. The central issue on appeal is whether BCDC has jurisdiction over lands, now subject to tidal action, that were not so inundated when this agency was established in 1965. (Gov. Code, § 66610.)[1] We find that the lands at issue are subject to BCDC jurisdiction and we affirm the judgment.

## I.  FACTS

White Slough, a tributary of the Napa River, was originally a tidal waterway connected to San Francisco Bay (Bay). In the late part of the last century, lands once within White Slough—including most of the lands at issue in this action—were reclaimed with the construction of a series of dikes and were no longer subject to the Bay's tidal action. A narrow strip of White Slough, which now meanders through part of the area, remained open and affected by tides. In 1965, when the Legislature created BCDC in the McAteer-Petris Act (see § 66650) and in 1970 when the Legislature extended its jurisdiction to include the Napa River (see § 66610, subd. (e) [added Stats. 1970, ch. 1279, § 1, p. 2313]), the lands at issue—except for the narrow strip of White Slough—did not fall within BCDC jurisdiction.

Between 1976 and 1978, natural conditions caused levee failures along the Napa River. As a result, much of the subject lands became inundated and were subject to tidal action once again—a situation that continues to exist today. The dikes have not been repaired and most of the subject lands have been subject to tidal action since 1978.

In July 1980, respondent San Francisco Bay Conservation and Development Commission (BCDC) learned that appellant George Gianulias and his company, appellant Revolting Development, Inc., were filling the subject lands near White Slough, in Vallejo, Solano County. The property is alleged to be within BCDC jurisdiction and no one had acquired the necessary permit for this activity. BCDC's acting director issued a cease and desist order in August 1980, commanding Gianulias to stop filling and grading activities near the shoreline at the site. On November 4, 1980, Gianulias agreed to be bound by the order.

On November 13, 18, and 20, 1980, BCDC staff members observed violations of the cease and desist order. When one staff member attempted to

---

[1]All statutory references are to the Government Code, unless otherwise indicated.

photograph activities on the site, Gianulias struck him, broke his camera, and confiscated the film. On November 26, 1980, the People, acting on behalf of BCDC, filed a complaint against Gianulias and Revolting Development seeking injunctive relief and civil penalties. The superior court issued a temporary restraining order on the same day, prohibiting filling and grading within 100 feet of the shoreline. A preliminary injunction was issued on December 8, 1980, effective during the pendency of the litigation.

In August 1981, appellants City of Vallejo and the Vallejo Sanitation and Flood Control District moved to intervene in the action. Before the levee failures in 1976-1978, the District had constructed a major interceptor sewer under a portion of the now-flooded property. The District has a statutory duty to maintain this sewer. The City is interested in the outcome of this action because, if BCDC must approve any development on this site, the City's own development plans may be disrupted. The motion was granted and a complaint in intervention was filed in September 1981. The venue of the action was then transferred from Solano to Napa County. All four appellants argued at trial that the subject lands were not within BCDC jurisdiction.

Armed with declarations from its staff members of Gianulias's continuous violations of the preliminary injunction, BCDC filed an order to show cause for contempt in March 1982. At the contempt hearing, BCDC presented evidence of numerous violations of the injunction over a two-and-a-half-year-period—both filling and grading of fill within 100 feet of the shoreline. Gianulias denied that he, or anyone at his direction, had placed any fill or graded within 100 feet of the shoreline.[2]

The trial court found that the subject lands were within BCDC jurisdiction. Gianulias was cited for contempt and ordered to pay a $500 fine for it; he was also ordered to pay $ 12,000 in civil penalties pursuant to the original complaint. Gianulias, Revolting Development, the City, and the District filed timely notices of appeal from the judgment.

## II. JURISDICTION

The appellants' main contention is that the subject property is not within BCDC jurisdiction. ■ The trial court found that the site was within BCDC jurisdiction as it was "subject to tidal action" within the meaning of

---

[2]After Gianulias had been found in contempt, he admitted through his attorney that he had done work within the 100-foot limit on three occasions. On May 31, 1985, Gianulias was again held in contempt of court for violation of the permanent injunction issued at the end of this proceeding.

subdivision (e)(6) of section 66610. This provision includes within BCDC jurisdiction areas along the Napa River that are "subject to tidal action." Lands are subject to tidal action within the meaning of section 66610 if, as a result of natural destruction of man-made works, areas once outside BCDC jurisdiction come to be touched by tidal waters for a period of longer than one year. (Cal. Admin. Code, tit. 14, § 10132, subd. (a)(1).) As the parties all agree that the subject lands have been subject to tidal action since 1978, the subject lands fall within the statutory jurisdiction of BCDC.

Nevertheless, the appellants argue that because the subject lands were not subject to tidal action in 1965 when the Legislature established BCDC, it has no jurisdiction over the subject lands. In essence, they would freeze the jurisdictional boundaries of BCDC to coincide with the contours of the San Francisco Bay in 1965.

This is not a realistic interpretation. The Bay is an interconnected, unitary water system. Under the appellants' construction of BCDC jurisdiction, integral parts of the Bay, indistinguishable from other parts, would fall outside BCDC jurisdiction, to the detriment of the entire bay region. (See § 66600.) The appellants' interpretation of BCDC jurisdiction could lead to piecemeal filling of the Bay and its attendant threat to the entire Bay region —problems that BCDC was established to prevent. (See §§ 66600, 66601.) To adopt the appellants' argument would be to ignore the dynamics of a naturally changing water system.[3]

### III. LEGISLATIVE INTENT

The appellants also contend that the Legislature did not intend to include within BCDC jurisdiction lands that have been by time and cir-

---

[3]In their reply brief, the appellants suggest that this court should apply the rationale of *Beach Colony II* v. *California Coastal Com.* (1984) 151 Cal.App.3d 1107 [199 Cal.Rptr. 195], to BCDC jurisdiction. In *Beach Colony,* an appellate court held that owners of dry lands bordering on a wetland have a one-year common law right to restore their property to its original contours after the lands were washed into the sea. The case differs from the one presented on appeal. The *Beach Colony* lands were lost to the sea during a flood when debris *diverted* the raging waters *from their natural course* and through the subject dry lands, washing them away. (*Id.,* at pp. 1109-1118.) In the case at hand, lands that were once reclaimed from the Bay were *returned to their natural conditions* as a result of levee failure. In addition, *Beach Colony* was based on the common law right to reclaim lands lost to avulsion within one year after its loss, as codified in Civil Code section 1015. No common law right is involved in this appeal. However, the one-year reclamation period in section 1015 of the Civil Code coincides with the one-year period during which BCDC may *not* exercise jurisdiction over lands such as those involved in the present appeal, in order to allow property owners an opportunity to reclaim inundated lands. The regulation also provides for an extension of this one-year period. (Cal. Admin. Code, tit. 14, § 10132, subd. (a)(1).) (See fn. 4, *post.*) Neither Gianulias nor Revolting Development asked BCDC to extend the reclamation period.

cumstance reclaimed by the Bay since 1965, arguing that the Legislature intended that BCDC jurisdiction be limited to the shoreline of the Bay as it existed in 1965. The trial court rejected the contention that a reference to the "present" shoreline in section 66604 limited BCDC jurisdiction to the 1965 shoreline, deciding that the key language is contained in section 66610 —the sole jurisdictional statute in the McAteer-Petris Act—"subject to tidal action." (*Blumenfeld* v. *San Francisco Bay Conservation etc. Com.* (1974) 43 Cal.App.3d 50, 56 [117 Cal.Rptr. 327].) The trial court ruled that BCDC's enabling statutes were to be broadly construed to promote the purpose of the statutes—to protect the Bay.

When the Legislature defined BCDC jurisdiction in section 66610 as encompassing lands "subject to tidal action," it did not define the exact meaning of this language. (*Blumenfeld* v. *San Francisco Bay Conservation etc. Com., supra,* 43 Cal.App.3d at p. 55.) We construe the section to effectuate the purposes of the McAteer-Petris Act (Act). (*Id.,* at p. 56.) The Act provides that piecemeal filling of the Bay may have serious effects (§ 66601) and that changes affecting one part of the Bay may also affect all other parts (§ 66600). These specific policies, combined with the overall object of the Act—to regulate conservation and development of the bay as a natural resource—support a broad interpretation of the jurisdictional language "subject to tidal action." (*Id.,* at pp. 56-58.)

## IV. Effect of Regulation on Jurisdiction

The appellants also contend that BCDC has illegally extended its jurisdiction by administrative regulation.[4] Again, the trial court's findings contradict the appellants' contentions. The trial court stated that BCDC jurisdiction "is described solely in § 66610." Finding regulation section 10132— defining the term "subject to tidal action"—to be consistent with section 66610, it gave great weight to the regulation. The regulation was deemed an interpretation of the jurisdictional statute, not an extension of jurisdiction.

Regulation section 10132 interprets "subject to tidal action" in a manner consistent with section 66610. (*Blumenfeld* v. *San Francisco Bay Conserva-*

---

[4]Subdivision (a)(1) of section 10132 of title 14 of the California Administrative Code reads, as follows: " 'Subject to tidal action' means: touched by tidal waters at any stage of the tide at any time on or subsequent to September 17, 1965, excluding however: [¶] (1) Areas not touched by tidal waters on September 17, 1965, and touched by tidal waters thereafter as a result of natural destruction of man-made works, provided that such exclusion shall be effective only for a period of one year from the initial such touching by tidal waters, or for such longer period as may be specificied by Commission resolution based upon its finding that repairs of the destruction could not physically be completed within one year."

*tion etc. Com., supra,* 43 Cal.App.3d at pp. 57-58.) ▮▮ Courts will not depart from an administrative agency's construction of a statute unless this construction is clearly erroneous or unauthorized. (*Judson Steel Corp. v. Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658, 668 [150 Cal.Rptr. 250, 586 P.2d 564]; *Trailer Train Co.* v. *State Bd. of Equalization* (1986) 180 Cal.App.3d 565, 579 [225 Cal.Rptr. 717].) As the boundaries of the Bay change, so does the jurisdiction of BCDC. Regulation section 10132 is a rational construction of the jurisdictional term "subject to tidal action," used in section 66610, in the context of a changing bay.

Regulation section 10132 interprets jurisdictional language in section 66610; it does not assert or extend jurisdiction in and of itself. BCDC has not illegally extended its jurisdiction by promulgating regulation section 10132.

### V. Conflict with Specific Legislative Act

The District contends that regulation section 10132 conflicts with a specific legislative act, and is thus void and unenforceable. The trial court relied on established case law, finding that the Act makes it clear that the Legislature intended that BCDC should have authority to grant or deny *any* request for permission to fill the Bay, even requests coming from entities created by specific legislative acts.

The District argues that regulation section 10132 allows BCDC to "assert jurisdiction" over works and projects under District authority, in conflict with the District's enabling legislation. (See Stats. 1953, First Ex. Sess. 1952, ch. 17, pp. 351-370; Deering's Wat.-Uncod. Acts (1970 ed.) Act 8934, pp. 454-474.) As we have already determined, this administrative regulation does not *assert* BCDC jurisdiction, it merely *defines* a jurisdictional term in section 66610. (See part IV, *ante.*) Thus, we construe the District's argument to be that the controlling statute, rather than the underlying regulation, conflicts with the specific legislation giving the District the authority to provide sewer collection and disposal within the District area.

▮ Section 66610, establishing BCDC jurisdiction, and section 66632, requiring *any* agency to obtain a permit, are part of the Act, a general legislative act. (See § 66650; see also *Candlestick Properties, Inc.* v. *San Francisco Bay Conservation etc. Com.* (1970) 11 Cal. App.3d 557, 565-566 [89 Cal.Rptr. 897].) The legislation creating the District is a specific legislative act. (Stats. 1953, First Ex. Sess. 1952, ch. 17, § 2, p. 352; Deering's Wat.-Uncod. Acts (1970 ed.) Act 8934, § 2, p. 456.) A specific legislative act

controls over a general act if the two conflict, but only in the absence of a clear legislative intention to the contrary. "The language of the McAteer-Petris Act is so strong as to make it abundantly clear that the Legislature intended [BCDC] to have authority to grant or deny *any* request for permission to fill bay lands." Thus, BCDC may compel any agency—even one created by a specific legislative act—to obtain a permit before undertaking any activities regulated by BCDC within its jurisdiction. To exempt District lands from the control of BCDC could impede BCDC in carrying out its functions. (*Candlestick Properties, Inc.* v. *San Francisco Bay Conservation etc. Com., supra,* 11 Cal.App.3d at pp. 565-566.) If section 66610 conflicts with the District's enabling legislation, section 66610 controls. (*Id.,* at pp. 564-566.) As such, section 66610, as interpreted in regulation section 10132, requires the District to obtain a permit from BCDC before engaging in any regulated activities within BCDC jurisdiction. (See § 66601.)

## VI. Due Process and Equal Protection

Finally, Gianulias and Revolting Development contend that regulation section 10132 deprives property owners of due process and equal protection. The trial court properly rejected this argument.

Gianulias and Revolting Development contend they did not receive notice of BCDC's intent to exercise jurisdiction before that jurisdiction attached, one year after tidal inundation. (See Cal. Admin. Code, tit. 14, § 10132, subd. (a)(1).) ▉ Due process requires reasonable notice and opportunity to be heard before governmental deprivation of a significant property interest. However, only a governmental decision that is adjudicative in nature—a decision involving the application of a rule to a specific set of facts—is subject to these procedural due process principles. A legislative action—the formulation of a rule to be applied in all future cases—is not burdened by such requirements. (*Horn* v. *County of Ventura* (1979) 24 Cal.3d 605, 612 [156 Cal.Rptr. 718, 596 P.2d 1134]; see *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 35, fn. 2 [112 Cal.Rptr. 805, 520 P.2d 29].) "Where a rule of conduct applies to more than a few people it is impracticable that every one should have a direct voice in its adoption." (*Bi-Metallic Co.* v. *Colorado* (1915) 239 U. S. 441, 445 [60 L.Ed. 372, 375, 36 S.Ct. 141] [Holmes, J.]; *Horn* v. *County of Ventura, supra,* 24 Cal.3d at p. 613.) BCDC complied with codified administrative procedures for adoption of such a regulation that were in effect in 1970, the date that regulation section 10132 was adopted. (See former § 11423 [failure to mail notice to any person does not invalidate regulation];

see Stats. 1979, ch. 284, § 3, p. 1063.) The application of this regulation to the subject property does not violate due process.

■ Nor does the regulation deprive Gianulias or Revolting Development of equal protection. They contend that because their property does not touch on the broken levees themselves, they were powerless to rebuild the dikes within the one-year period of the regulation, and thus prevent application of BCDC jurisdiction, an option available only to those property owners whose property touches the levees. A regulation does not violate equal protection if it is rationally related to a legitimate purpose. (*Blumenfeld* v. *San Francisco Bay Conservation etc. Com., supra,* 43 Cal.App.3d at pp. 58-59; see *Brown* v. *Merlo* (1973) 8 Cal.3d 855, 861 [106 Cal.Rptr. 388, 506 P.2d 212, 66 A.L.R.3d 505].) The purpose of the Act was to enable BCDC to effectively regulate the conservation and development of the Bay as a natural resource. To assert jurisdiction over lands subject to tidal action, whether or not those lands touch the yet-to-be-repaired levees, rationally relates to the purposes of BCDC. (*Blumenfeld* v. *San Francisco Bay Conservation etc. Com., supra,* 43 Cal.App.3d at pp. 58-59 [no equal protection violation to assert BCDC jurisdiction over lands without a functioning tidal gate; interpreting regulation section 10132, subd. (a)(2)].) As the subject lands are in fact "subject to tidal action," the regulation does not violate equal protection. (*Ibid.*; § 66610, subd. (e); see Cal. Admin. Code, tit. 14, § 10132, subd. (a)(1).)

The judgment is affirmed. Each appellant shall bear its own costs on appeal. All appellants shall divide respondent's costs equally among them.

Anderson, P. J., and Sabraw, J., concurred.

A petition for a rehearing was denied January 28, 1987, and the petition of all appellants for review by the Supreme Court was denied March 25, 1987.