[No. A064842. First Dist., Div. Five. Mar. 17, 1995.]

LITTORAL DEVELOPMENT CO. et al., Plaintiffs and Appellants, v. SAN FRANCISCO BAY CONSERVATION AND DEVELOPMENT COMMISSION, Defendant and Respondent.

**COUNSEL**

Bowers, Thomas & Associates, Terry J. Thomas and Sherry B. Bowers for Plaintiffs and Appellants.

Ronald A. Zumbrun, Robin L. Rivett and Geralynn Patellaro as Amici Curiae on behalf of Plaintiffs and Appellants.

Daniel E. Lungren, Attorney General, Roderick E. Walston, Chief Assistant Attorney General, Jan S. Stevens, Assistant Attorney General, and Linus Masouredis, Deputy Attorney General, for Defendant and Respondent.

**OPINION**

**PETERSON, P. J.**—This is the third appeal in which we have dealt with legal issues arising from the anomalous status of a bayfront parcel owned by

appellants Littoral Development Co. and Diversified Realty Services (hereafter jointly referred to as Littoral). Here, Littoral contends: (1) The bayward one-third of its parcel was not subject to the jurisdiction of the San Francisco Bay Conservation and Development Commission (BCDC), under the definition of Government Code[1] section 66610, as "marshland" lying lower than five feet in elevation; (2) BCDC's enforcement actions constituted a regulatory taking; and (3) Littoral should be awarded attorney fees as a result of BCDC's conduct.

We must reject these contentions. First, as to the question of whether the bayward one-third of the parcel is "marshland" subject to BCDC jurisdiction, we previously answered the question in the affirmative in *Littoral Development Co. v. San Francisco Bay Conservation etc. Com.* (1994) 24 Cal.App.4th 1050, 1064-1065 [29 Cal.Rptr.2d 518] (*Littoral I*). Even if relitigation of this question was not barred by res judicata or collateral estoppel, we would reach the same conclusion. The relevant evidence, including that of Littoral's own expert, indicates the bayward one-third of the parcel is "marshland" subject to BCDC jurisdiction.

Second, we find no regulatory taking of Littoral's property; as a result of our *Littoral I* decision, Littoral retains title to all its property, and is subject to BCDC's bay jurisdiction based only upon the marshland nature of the bayward one-third of its land.

Finally, an award of attorney fees is not justified here, because Littoral did not prevail in this action and BCDC's prior regulatory decisions, though partially erroneous, were not so egregious as to justify such an award.

## I. Facts and Procedural History

The facts regarding the parcel in issue are fully stated in our prior *Littoral I* decision. (24 Cal.App.4th at pp. 1054-1056.) For present purposes, the most significant fact is that in *Littoral I* we (1) rejected BCDC's attempt to assert regulatory jurisdiction over Littoral's parcel based upon BCDC's theory that almost the entire parcel lay beneath the level of an asserted line of highest tidal action or LHTA, but (2) affirmed that portion of BCDC's jurisdictional decision which asserted jurisdiction over the bayward one-third of the property, based upon the administrative decision that this portion of the property was marshland subject to BCDC jurisdiction under section 66610. (*Littoral I, supra,* 24 Cal.App.4th at p. 1066.)

We denied rehearing, and our Supreme Court denied review. The *Littoral I* decision, thus, became binding on the parties by virtue of res judicata, collateral estoppel, and as a directly relevant precedent.

---

[1]All subsequent statutory references are to the Government Code.

In a subsequent unpublished decision, *Littoral Development Co.* v. *County of Marin* (Nov. 23, 1994) A064513 (*Littoral II*), we also ruled against efforts of the County of Marin to order the abatement of all uses of Littoral's property.

For purposes of the present appeal, the proceedings were triggered by an attempt on BCDC's part to secure a cease and desist order, requiring Littoral to vacate the property and scrape away fill material alleged to have been illegally deposited on the landward two-thirds of the property. The trial court granted a stay of BCDC's order pending the appeal in *Littoral I*, which would resolve the jurisdictional dispute. As a result of our *Littoral I* decision, BCDC recognized it could not secure such a cease and desist order, vacated the order, and dismissed its appeal from the trial court's order granting a stay. BCDC no longer asserts that it has jurisdiction over the upland two-thirds of the parcel, based upon any claim that it is bay or marshland; BCDC does have a shorezone permit jurisdiction over a 100-foot band measured from the upland edge of the marshland. The only issues validly remaining here concern Littoral's legal contentions arising from the now vacated cease and desist order.

For purposes of the analysis which follows, it must be understood that Littoral's parcel comprises three distinct zones for purposes of BCDC's jurisdiction. The lowest and most bayward portion is the roughly one-third of the parcel which we will describe as the "marshland." Inland from that zone is a 100-foot band in which BCDC has more limited rights of permit jurisdiction. Inland from that area is the portion of the upland which is entirely free of all BCDC jurisdiction.

II. DISCUSSION

We must reject Littoral's contentions. The bayward one-third of the parcel was properly shown to be marshland, and we so ruled in *Littoral I*. Even if that decision were not binding, we would reach the same conclusion again, based upon the evidence before us here. BCDC's unsuccessful attempt to secure a cease and desist order did not result in any regulatory taking. Littoral is not entitled to its attorney fees.

A. *Marshland Definition*

BCDC's jurisdiction over bayfront marshland is defined by section 66610, which provides in pertinent part as follows: "For the purposes of this title, the area of jurisdiction of [BCDC] includes: [¶] (a) San Francisco Bay, being all areas that are subject to tidal action from the south end of the bay to the

Golden Gate . . . and to the Sacramento River line . . . , including all sloughs, *and specifically, the marshlands lying between mean high tide and five feet above mean sea level*; tidelands (land lying between mean high tide and mean low tide); and submerged lands (land lying below mean low tide)." (Italics added.)

■ Littoral contends the bayward one-third of the parcel does not meet this statutory definition. However, if that were the case, Littoral should have produced evidence on this issue in *Littoral I*; it did not, and is barred by res judicata and collateral estoppel from doing so here. (See *Barker* v. *Hull* (1987) 191 Cal.App.3d 221, 225-227 [236 Cal.Rptr. 285]; *McClain* v. *Rush* (1989) 216 Cal.App.3d 18, 28-29 [264 Cal.Rptr. 563].) Of course, some cases suggest we may have discretionary power to relax these rules somewhat, in rare instances when the inability to raise a constitutional argument would work a serious injustice and harm the public interest. (See *Arcadia Unified School Dist.* v. *State Dept. of Education* (1992) 2 Cal.4th 251, 258-259 [5 Cal.Rptr.2d 545, 825 P.2d 438]; *City and County of San Francisco* v. *Padilla* (1972) 23 Cal.App.3d 388, 400 [100 Cal.Rptr. 223].) This is not such an exceptional case, however.

We addressed the issue of section 66610's definition of "marshland" in *Littoral I*: "As BCDC explicitly found, this unfenced portion of the parcel is a salt marsh, and came within the statutory definition of 'marshland' lying lower than five feet above mean sea level. There is uncontradicted evidence that this portion of the parcel is covered by distinctive species of plants which are characteristic of salt marshes; and the land, even when it is not underwater, is covered with salt deposits, indicating regular tidal inundation. It also appears from the surveys done in the middle and late 1960's and thereafter that this portion of the parcel, up to the fence separating it from the upland portion filled in 1976, has always been below five feet in elevation. Section 66610, thus, provides that the bayward portion of the parcel is within BCDC jurisdiction. *We affirm this portion of the ruling below.* [¶] . . . . [¶] Our resolution of the case moots many of the remaining issues, and we need not address them. In particular, we need not address the argument of appellants and the amicus curiae that BCDC jurisdiction determined by the level of the highest high tide would constitute an unconstitutional taking. Among other things, the taking issue is also not ripe for review; there is no final decision taking any land. (See *Sierra Club* v. *California Coastal Com.* (1993) 12 Cal.App.4th 602, 617-619 . . . , review den.; see also *Moerman* v. *State of California* (1993) 17 Cal.App.4th 452, 459 . . . , review den.) The issue presently before us is simply one of determining where BCDC's jurisdiction over private property lies, and our

reversal of the judgment as to the upland portion of the parcel considerably blunts the taking argument—as well as appellants' contentions that BCDC's decision is arbitrary because their littoral neighbors were treated more leniently, since the neighbors' land was not subjected to BCDC jurisdiction up to the line of the highest tide. (Cf. *Lucas* v. *South Carolina Coastal Council* (1992) 505 U.S. ___, ___ [120 L.Ed.2d 798, 112 S.Ct. 2886].)" (24 Cal.App.4th at pp. 1064-1065, italics added.)

Our prior decision as to the marshland character of the bayward one-third of the property, and the mootness of the taking argument, was based upon abundant uncontradicted evidence in the *Littoral I* administrative record relevant to BCDC's decision, including numerous surveys of the property which concluded the bayward area was a salt marsh. Nothing has changed about the nature of that evidence.

■ Littoral and an amicus curiae, Pacific Legal Foundation, suggest the statutory definition of "marshland" is so vague and broad that it gives BCDC unchecked discretion to determine whether bayfront land fits the definition. They further suggest this gives BCDC the power to abuse or extort property owners by extending its jurisdiction landward, in a way similar to the method we rejected in *Littoral I* as to BCDC's theory of jurisdiction by virtue of manipulation of an overly broad LHTA methodology.

However, we find no such abuse remaining in this case, and the potential for abuse is rather sharply limited by the statutory language. First, the statutory term "marshland" is not unduly vague or mysterious; it is a term in common usage. According to a dictionary published in the same year section 66610 was first enacted in 1965, the term "marshland" means the same as the word "marsh"; that is, "a tract of soft wet land: FEN, SWAMP, MORASS; *specif.* such a tract of land often periodically inundated and treeless and usu. characterized by grasses, cattails, or other monocotyledons . . . ." (Webster's New Internat. Dict. (3d ed. 1965) p. 1385, cols. 3 & 1, italics in original.) This definition used in common parlance is consistent with the use of the term in the California case law (see *State of California* v. *Superior Court (Lyon)* (1981) 29 Cal.3d 210, 215 [172 Cal.Rptr. 696, 625 P.2d 239] ["marshland" along a freshwater lake]; *Blumenfeld* v. *San Francisco Bay Conservation etc. Com.* (1974) 43 Cal.App.3d 50, 53-56 [117 Cal.Rptr. 327] [rejecting strict construction of section 66610's definition of BCDC jurisdiction over tideland and "marshland"]; *Golden Gate Bridge etc. Dist.* v. *Muzzi* (1978) 83 Cal.App.3d 707, 711-713 [148 Cal.Rptr. 197] ["marshland" in San Francisco Bay]; *City of Chula Vista* v. *Superior Court* (1982) 133 Cal.App.3d 472, 490-491 [183 Cal.Rptr. 909] [coastal "marshland" littoral to San Diego

Bay]) and the definition fits the facts here; the evidence supports the conclusion that the bayward portion of the parcel is indeed "marshland."

Further, the Legislature has limited the scope of the term in section 66610, so that it only applies to land "subject to tidal action" (thereby excluding freshwater marshes) and only to land which lies between mean high tide and five feet above mean sea level (thereby excluding land which is marshy and affected by the tide, but which lies relatively high on the bayfront uplands). As so limited in section 66610, there is no danger BCDC will attempt to assert "marshland" jurisdiction over parts of Market Street in San Francisco, or other upland developed parcels. (See *Littoral I, supra,* 24 Cal.App.4th at p. 1064, fn. 3.) In the context of this particular case, we also note that BCDC is not now seeking to assert jurisdiction over the landward two-thirds of the parcel, based upon a claim that it was "marshland." BCDC recognizes that the term cannot extend to developed and filled upland, which is paved and used as a parking lot, building site, or lumber yard, such as the landward two-thirds of the parcel. Land which in its present state is developed and devoted to these economically valuable uses certainly is not "marshland"; the bayfront third of the parcel here, however, has no present use with economic value, and it has all the characteristics of "marshland" under section 66610.

We also cannot agree with the belated contentions of Littoral or the amicus that the term "marshland" as used in section 66610 is so vague and overbroad as to be unconstitutional, in giving BCDC untrammeled powers to impose its bureaucratic will upon private property in an arbitrary manner. Unlike many other statutory definitions which limit development of "wetlands" or other arguably vague and ill-defined areas, thus resulting in some potential for bureaucratic overreaching (cf. *Tabb Lakes, Ltd.* v. *U. S.* (Fed. Cir. 1993) 10 F.3d 796, 803 (*Tabb Lakes*)), the term "marshland" as used in section 66610 has a relatively precise definition, which applies to the bayward one-third of the parcel in issue here, and gives BCDC jurisdiction over defined areas in low-lying bayfront areas covered by salt marshes. Although the limits of bayfront marshland may change over time as a result of natural or manmade changes to the bay (see *Littoral I, supra,* 24 Cal.App.4th at pp. 1062-1063; *People* ex rel. *San Francisco Bay etc. Com.* v. *Gianulias* (1986) 188 Cal.App.3d 520, 525 [233 Cal.Rptr. 621]; *Leslie Salt Co.* v. *San Francisco Bay Conservation etc. Com.* (1984) 153 Cal.App.3d 605, 617 [200 Cal.Rptr. 575]), the statutory term does not require further limitation by regulation or judicial interpretation in order to make the statute understandable or avoid bureaucratic overreaching.

We likewise must reject Littoral's claim that BCDC was required to give Littoral one year's notice under title 14, California Code of Regulations, section 10123, subdivision (a) before asserting jurisdiction over the

property; the regulation was designed to give owners notice and an opportunity to reclaim land suddenly inundated by the "destruction" of a levee, not to give owners notice that they have a preexisting salt marsh on their property—a fact presumably known or readily apparent to owners and others. In this connection, we also find unpersuasive the conclusory allegation of Littoral's principal, Jack Krystal, to the effect that there is no "real marsh" on the parcel. This appears to be merely a semantic issue, since Krystal does not specifically contest the observations by his own scientist and others which support the legal conclusion that this land is marshland, i.e., that it is a low-lying treeless bayfront parcel covered by plants characteristic of salt marshes. We understand Littoral's claim that this particular small parcel of salty marsh does not have outstanding scenic value, but since scenic value is not required as part of the statutory definition, the land is still "marshland."

We also reject Littoral's claim that this "marshland" did not exist as such in 1965; it appears from the evidence that this area has always been below five feet in elevation with a marshy character, despite occasional futile attempts to fill the land. Contrary to Littoral's claims, this case does not truly involve subsidence of a parcel into a marsh which did not previously exist; it involves unsuccessful attempts to fill marshland which the evidence shows was always present. The evidence does not support Littoral's claim that the preexisting marsh was obliterated by filling prior to 1965; it appears the area has always been a salt marsh, despite attempts at filling which only temporarily retarded the growth of marsh plants, and did not succeed in creating economically valuable upland.

Finally, we cannot endorse Littoral's attempt to overturn the finding of marshland jurisdiction by the production of belated new evidence, including a 1993 survey which appears to show what Littoral describes as a " 'peanut' shaped 'island' of fill" which is assertedly offshore from Littoral's developed property, and a few inches above the five-foot level. No good explanation is offered as to why this 1993 survey was not alluded to in *Littoral I*; further, BCDC contends the bump of slightly less low-lying land resulted from recent unauthorized dumping or filling; its height is also contradicted by the other evidence relied upon by BCDC, which showed this area never was higher than five feet. Moreover, as this peanut shaped "island" which apparently measures only about 10 feet by 20 feet, is not only often inundated but also is not linked to dry land, we question whether it has any significance here at all; Littoral obviously could not justifiably rely on future development of this tiny peanut parcel without any connection to land and surrounded by an area within BCDC's "marshland" jurisdiction.

In any event, we see no reason to revisit this issue in light of Littoral's belated and ambiguous new evidence, and adhere to our finding in *Littoral I* that the bayward portion of the land in question is marshland subject to section 66610. The delineation of BCDC's jurisdiction over marshland and other types of bayfront property is a matter which may be addressed by the Legislature in the future, but we must deal with the statutory definitions as they currently exist. (*Littoral I*, *supra*, 24 Cal.App.4th at p. 1064.)

### B. *Regulatory Taking*

■ We are not persuaded by Littoral's claims that BCDC's action resulted in an unconstitutional regulatory taking of the property. First, no portion of the property has been taken by BCDC. Littoral retains title to the entire property, and BCDC does not have "bay" jurisdiction over the landward two-thirds of the property. Under the circumstances, we cannot find any regulatory "taking" of any property, merely because delay resulted from factual or legal uncertainties which temporarily clouded the respective limits of BCDC's and Marin County's regulatory jurisdiction. (See *United States* v. *Riverside Bayview Homes, Inc.* (1985) 474 U.S. 121, 126-127 [88 L.Ed.2d 419, 425-427, 106 S.Ct. 455] [The mere fact that an owner needs a permit is not a taking.]; *Tabb Lakes*, *supra*, 10 F.3d at pp. 799-803 [Similar claims of a regulatory taking as a result of delay incident to a permit process and a cease and desist order for another littoral development were rejected.].) We cannot speculate that BCDC will unreasonably deny any request for maintenance or development of the upland parcel, in the area subject to its permit jurisdiction. Littoral also was not, in fact, deprived of the use of its property during the period of the delay, as we observed in *Littoral II*, *supra*, We reject this contention that a taking occurred, as we did in *Littoral I*. (See 24 Cal.App.4th at p. 1065; see also *Hensler* v. *City of Glendale* (1994) 8 Cal.4th 1, 8-13 [32 Cal.Rptr.2d 244, 876 P.2d 1043] [rejecting claims of a compensatory taking arising from the effect of a ridge line acreage preservation law which prevented development of 40 percent of the property]; *Tahoe Keys Property Owners' Assn.* v. *State Water Resources Control Bd.* (1994) 23 Cal.App.4th 1459, 1478-1480 [28 Cal.Rptr.2d 734] [rejecting similar claims concerning regulatory protection of Lake Tahoe watershed].)

While we recognize that, on very different facts, a transient and impermanent interference in real property use due to egregious bureaucratic overreaching may arguably constitute a compensable temporary taking, BCDC's actions here were facially valid and supported by a plausible though erroneous legal argument which the trial court accepted. We decline to hold that such a taking occurred here or occurs every time a land-use agency makes an

erroneous decision which is ultimately overturned in part on appeal. This is especially so where, as here, the property's use continued during the pendency of legal proceedings.

### C. *Attorney Fees*

Littoral also seeks an award of its attorney fees under section 800. However, Littoral did not prevail on the remaining issues in this appeal; we also have now lost jurisdiction over the *Littoral I* appeal, so we cannot award fees in that proceeding. Nor does it appear that BCDC's position, though only partially vindicated in *Littoral I*, was so without any legal basis and wholly arbitrary and capricious as to justify such an award. (See *Halaco Engineering Co.* v. *South Central Coast Regional Com.* (1986) 42 Cal.3d 52, 79 [227 Cal.Rptr. 667, 720 P.2d 15].)

### III. DISPOSITION

The matter is remanded to the trial court with instructions to dismiss the petition as moot in light of the fact that the cease and desist order has previously been vacated. Each party shall bear its own costs.

King, J., and Haning, J., concurred.

Appellants' petition for review by the Supreme Court was denied June 15, 1995.