[Civ. No. 19681. Fourth Dist., Div. Two. Apr. 2, 1979.]

CITY OF DESERT HOT SPRINGS, Plaintiff and Respondent, v.
COUNTY OF RIVERSIDE, Defendant and Appellant.

**COUNSEL**

James H. Angell, County Counsel, Loyal E. Keir and William P. McNames, Deputy County Counsel, for Defendant and Appellant.

Donald L. Clark, County Counsel (San Diego), Lloyd M. Harmon, Chief Deputy County Counsel, and Jack Limber, Deputy County Counsel, as Amici Curiae on behalf of Defendant and Appellant.

Best, Best & Krieger, William R. DeWolfe and John E. Brown for Plaintiff and Respondent.

**OPINION**

**MORRIS, J.**—This case involves the taxability of the possessory interest of a private contractor-builder under a lease of property owned by the City of Desert Hot Springs, leased to the builder for the purpose of construction by him of certain buildings, and leased back to the city under a lease with option to purchase the buildings at the expiration of the five-year and ten-year anniversary dates of the sublease.

The taxes in issue were assessed not on the fee interest in the property owned by the city, which is exempt, but rather on the possessory interest of the contractor as owner of the leasehold estate. The city, having obligated itself under the sublease to pay all taxes levied upon the contractor's interest in the property, paid under protest the taxes levied for the tax years 1973-1974, 1974-1975, and 1975-1976, and brought this

action against the County of Riverside to recover the sums paid.[1] The trial court entered judgment in favor of the taxpayer, and the county appeals.

## THE FACTS

Prior to the year 1970, the City of Desert Hot Springs city offices were located in rented facilities. In that year a four-and-one-half acre parcel of land was donated to the city to be used for the construction of a civic center complex. In order to finance the construction but at the same time avoid violating the one-year debt limitation provision of the California Constitution,[2] the city entered into the "lease-leaseback" agreement with Herbert Goldhammer which provided for the construction by him of a city hall and a public library structure to be used by the county.[3]

The agreement entitled "Lease and Sublease" provided essentially as follows. The city leased the property to Goldhammer for an effective term of 50 years for the consideration of $1, possession to be delivered upon completion of construction. Goldhammer subleased to the city for a term of 15 years commencing upon completion and availability of the facilities, for an annual rental of $16,617.60, payable in monthly installments of $1,384.80. The rental was based on a maximum construc-

---

[1]Joined with the city as plaintiffs in the action are Benita Goldhammer, the widow of Herbert Goldhammer (the builder-contractor), Ellis J. Horvitz, coexecutor with Mrs. Goldhammer of Herbert Goldhammer's estate; and Southwest Bank, the holder of a security interest in the property.

[2]California Constitution, article XI, section 18 (now art. XVI, § 18) provides: "No county, city, town, township, board of education, or school district, shall incur any indebtedness or liability in any manner or for any purpose exceeding in any year the income and revenue provided for such year, without the assent of two-thirds of the qualified electors thereof, voting at an election to be held for that purpose. . . . nor unless before or at the time of incurring such indebtedness provision shall be made for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also provision to constitute a sinking fund for the payment of the principal thereof, on or before maturity, which shall not exceed forty years from the time of contracting the same; provided, however, anything to the contrary herein notwithstanding, when two or more propositions for incurring any indebtedness or liability are submitted at the same election, the votes cast for and against each proposition shall be counted separately, and when two-thirds or a majority of the qualified electors, as the case may be, voting on any one of such propositions, vote in favor thereof, such proposition shall be deemed adopted."

[3]We are not here concerned with that portion of the property used by the county for public library purposes. Property used for libraries is exempt from taxation under California Constitution article XIII, section 3, subdivision (d), and Revenue and Taxation Code section 202, subdivision (a)(2) by reason of its *use*, not its ownership.

tion cost of $142,500, and the city was given the option to purchase at the end of the fifth year by paying $115,170, or at the end of the tenth year by paying $68,170. The city also assumed payment of all taxes, insurance and expenses caused by any default of the city.

The agreement expressly authorized the use by Goldhammer of the "Lease and Sublease" as collateral security to obtain construction financing in the amount of $142,500, and authorized the execution of instruments providing for the city to pay all rental payments directly to a trustee for the lending institution. The pay-off period on the bank's loan was to coincide with the term of the 15-year sublease.

Title to the real property was retained in the city subject to the lease and sublease and title to all structures was to remain in Goldhammer during the term of the lease and sublease and to vest in the city at the end of the 50-year term.

Goldhammer retained the right of access to the premises for inspection and purposes connected with his rights and obligations under the lease. In event of default by the city which the city failed to remedy after notice, Goldhammer had the right to terminate the sublease without terminating the ground lease and to reenter the premises, or without terminating the sublease to reenter and relet the premises for the account of the city, the city to pay any deficiency.

Finally, the lease is to terminate upon the first to occur of the following: (1) 35 years after the term of the sublease to the city, (2) exercise by the city of its option to purchase, or (3) repayment by the city of all encumbrances.

The buildings were completed and the city went into possession under the sublease.

Commencing with the tax year 1973-1974, the county assessor levied a tax on the possessory interest of Goldhammer under the lease.[4] The city paid pursuant to the agreement contained in the lease, and sued to recover unsecured property taxes paid under protest, and for declaratory and injunctive relief.

---

[4]With respect to the 1974-1975 tax year, the possessory interest was initially assessed to Southwest Bank because of the 1973 assignment of the "Lease and Sublease" to the bank. Since the bank had no possessory interest, the assignment being solely for the purpose of

The trial court found that "While [the agreement] was entitled 'Lease and Sublease,' it was the intention of all parties . . . that it would serve as the most economical method of arranging financing for, and construction of, the subject City Hall and library structures for the CITY." The court also found that "At no time . . . has it been expected . . . that any of the events would occur which, under the AGREEMENT, would give anyone but the CITY the right to possession . . . ." Finally, the court found that "At all times since completion of construction and commencement of occupancy, all essential *indicia* of ownership of the real property, including the subject land and improvements thereon, have been in Plaintiff CITY."

The court concluded that each tax levy based on the assessments of the possessory interest was void and the City was entitled to a refund.

Judgment was entered granting the refund, declaring that no possessory interest exists under the lease agreement, and enjoining the county from further assessment of the interest.

### DISCUSSION

Appellant county contends that the lease-sublease agreement created a valid leasehold in the property, and that as a matter of law such leasehold constitutes a possessory interest which is fully taxable under California law. As subsidiary issues the county complains that (1) the trial court committed reversible error by failing to determine whether the agreement constituted a valid lease agreement or a 15-year installment purchase contract, (2) the trial court's finding that all indicia of ownership of the property including the improvements are in the city is not supported by substantial evidence, and (3) the city's contractual obligation to pay the property taxes does not defeat the validity of the lease.

Since respondent city does not contend that its agreement to pay the taxes affects the validity of the lease, that argument does not merit discussion. Moreover, the law is well settled that such agreements do not create a tax exemption. (*Cane* v. *City and County of San Francisco* (1978) 78 Cal.App.3d 654, 657-658 [144 Cal.Rptr. 316]; see *De Luz Homes, Inc.* v. *County of San Diego* (1955) 45 Cal.2d 546, 563 [290 P.2d 544].)

---

securing repayment of the $142,500 loan, that assessment was cancelled and an "escape assessment" imposed against Goldhammer for the year 1974-1975.

Therefore, if the interest is otherwise taxable, the payment of the tax is a matter of private arrangement.

The county seeks to impose upon the court the alternative of finding either that the agreement created a valid taxable leasehold interest in the property or that it created a 15-year installment purchase in violation of the constitutional debt limitation. The court quite properly refused to consider the debt limitation issue. That issue is not involved. There has been no contention that the agreement creates any indebtedness or liability which will exceed in any year the income or revenue provided for such year. Moreover, it is apparent from reading the agreement that such result was carefully avoided. There is no contractual right on the part of Goldhammer to accelerate liability for the remaining payments in the event of the city's default. (See *Dean* v. *Kuchel* (1950) 35 Cal.2d 444, 446-448 [218 P.2d 521]; *County of Los Angeles* v. *Nesvig* (1965) 231 Cal.App.2d 603, 611 [41 Cal.Rptr. 918].) The sole issue, as the court recognized, is whether the agreement created a possessory interest which is taxable under California law.

Neither is the issue presented in this appeal a question of whether there is substantial evidence to support a factual determination on conflicting evidence. There is no factual conflict. ■ "The interpretation of a written instrument, even though it involves what might properly be called questions of fact [citation], is essentially a judicial function to be exercised according to the generally accepted canons of interpretation so that the purposes of the instrument may be given effect. [Citations.] Extrinsic evidence is 'admissible to interpret the instrument, but not to give it a meaning to which it is not reasonably susceptible' [citations], and it is the instrument itself that must be given effect. [Citations.] It is therefore solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence. Accordingly, 'An appellate court is not bound by a construction of the contract based solely upon the terms of the written instrument . . . where there is no conflict in the evidence . . . .' " (*Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839], second quotation quoting *Estate of Platt* (1942) 21 Cal.2d 343, 352 [131 P.2d 825].)

Examining the factual findings the county complains of, it is clear that there was no conflict in the evidence on these issues. It was admittedly the intention of the parties that the lease-leaseback was to serve as a method

of financing the construction of the city hall and library complex, and it was certainly never anticipated that the city would default on any payment under the leaseback. Not only was this the undisputed evidence of the intention of the parties and purpose of the agreement, but this intention and purpose are entirely consistent with the written instrument itself. The further finding by the trial court that "all essential indicia of ownership of the real property" have been in the city simply represents the court's construction of the written instrument.

We therefore turn to the real issue presented by this appeal, to wit, the determination whether the agreement created a possessory interest which is taxable under California law.

Under the California Revenue and Taxation Code section 107, possessory interests are defined as follows:

" 'Possessory interests' means the following:

"(a) Possession of, claim to, or right to the possession of land or improvements, except when coupled with ownership of the land or improvements in the same person.

"(b) Taxable improvements on tax-exempt land."[5]

---

[5] The California Administrative Code, title 18, Public Revenues, chapter 1, subchapter 1, section 21, defines possessory interests as follows:

"The following definitions govern the construction of the words in the rules pertaining to possessory interests.

"(a) 'Possessory interest' means an interest in real property which exists as a result of possession, exclusive use, or a right to possession or exclusive use of land and/or improvements unaccompanied by the ownership of a fee simple or life estate in the property. Such an interest may exist as the result of:

"(1) A grant of a leasehold estate, an easement, a profit a prendre, or any other legal or equitable interest of less than freehold, regardless of how the interest is identified in the document by which it was created, provided the grant confers a right of possession or exclusive use which is independent, durable, and exclusive of rights held by others in the property;

". . . . . . . . . . . . . . . . .

"(b) 'Taxable possessory interest' means a possessory interest in nontaxable publicly owned real property, as such property is defined in section 104 of the Revenue and

Except for the specter of the debt limitation provisions, there is nothing in the record or in the arguments submitted herein to suggest that the "lease-leaseback" did not' provide for a valid and enforceable lease of land to Goldhammer, and leaseback of land and structures to the city. The extrinsic evidence that the city entered into the "lease-leaseback" arrangement "as a method of financing construction" is not inconsistent with the existence of a lease, and the city's intention to perform according to its terms and thereby retain possession is perfectly consistent with the existence of the lease.

It seems perfectly clear that the lease-leaseback agreement created two leaseholds. The first leasehold under the lease to Goldhammer for a period of 50 years, unless earlier terminated as provided in the lease, would most certainly create a taxable interest unless the leaseback has the effect of cancelling that interest.

■ It is well established that when there is a lease to a private owner of land owned by a tax-exempt governmental agency, the reversion is exempt from taxation and the possessory right under the lease is subject to assessment and taxation. (See *De Luz Homes, Inc.* v. *County of San Diego, supra,* 45 Cal.2d 546, 563, and cases there cited.) ■ It is also well established that when there is a lease to a tax-exempt governmental agency, of land owned by a private owner, the owner is not entitled to have the agency's possessory interest under the lease segregated from the owner's reversionary interest, but the owner is properly assessed with the entire value of the property.[6] (*Rothman* v. *County of Los Angeles* (1961)

---

Taxation Code, and in taxable publicly owned real property subject to the provisions of sections 3(a), (b) and 11, Article XIII of the Constitution.

"
 . . . . . . . . . . . .

"(c) 'Possession' means:

"(1) Actual possession, constituting the occupation of land or improvements with the intent of excluding any occupation by others that interferes with the possessor's rights, or

"(2) Constructive possession, which occurs when a person, although he is not in actual possession of land or improvements, has a right to possession and no person occupies the property in opposition to such right."

[6]The only exception is where property has been leased to a school district. In *Ross* v. *City of Long Beach* (1944) 24 Cal.2d 258 [148 P.2d 649], Traynor, J., dissenting, it was held that property leased to a school district was used exclusively for public school purposes within the constitutional exemption. This was based upon the constitutional language that property "used" by a school district is exempt from taxation, whereas only property "belonging" to the state is exempt. (*Id.,* at pp. 262-263.)

193 Cal.App.2d 522, 524 [14 Cal.Rptr. 427]; *Ohrbach's, Inc. v. County of Los Angeles* (1961) 190 Cal.App.2d 575, 580-581 [12 Cal.Rptr. 132].)

In *Ohrbach's, Inc. v. County of Los Angeles, supra*, 190 Cal.App.2d 575, the holder of property on a 99-year lease subleased a portion of the premises to the state, whose possessory interest was exempt. The taxpayer contended that the value of the possessory interest should have been computed and deducted from the assessment against him for the value of the land and improvements. The court held that the rental received from the sublease represented the use value of the sublease, and that value plus the value of the reversion constituted the entire value of the property and therefore the lessor was properly assessed for the entire value. (*Id.*, at p. 581.)

In *Rothman v. County of Los Angeles, supra*, 193 Cal.App.2d 522, the county had possession under a long term lease from a private owner-lessor. The court, following *Ohrbach's*, held that the taxes were properly assessed to the owner on the entire fee. (See also *Graciosa Oil Co. v. Santa Barbara* (1909) 155 Cal. 140, 144 [99 P. 483], where the court said "the owner of the fee may fairly be deemed to be the owner of the whole estate for purposes of taxation"; and see *City of Palo Alto v. County of Santa Clara* (1970) 5 Cal.App.3d 918, 921 [85 Cal.Rptr. 544].)

Respondent city relies on *Collins Electrical Co. v. County of Shasta* (1972) 24 Cal.App.3d 864 [101 Cal.Rptr. 285], where the Court of Appeal reversed in favor of plaintiff which sought recovery of taxes paid under protest. The plaintiff had built an electrical transmission line and substation on land owned by Shasta Dam Area Public Utility District. The plaintiff was given a right of way over the land for purposes of construction only. Following construction, plaintiff retained title to the transmission line under a 10-year lease of the line to the district with option to purchase. The option had been exercised but the purchase price was not due until the termination of the lease. The assessor contended that the improvements were owned by plaintiff under the agreement, and had taxed them as personal property. In reviewing, the court stated, "It appears that plaintiff's purpose for challenging the *status* of the property was based on its belief that if the facilities were deemed 'fixtures' and

thus improvements and real property, then it could only be assessed and taxed if it had a *possessory interest* in the facilities which it constructed for the district, an interest it argued it did not have. We agree. The lease provided for possession and control of the facilities and the risk of loss thereof to be that of the District. The plaintiff's right of possession only became a reality on breach or in the event the District did not exercise its option to purchase . . . . Where it appears that the essential indicia of ownership are in a tax-exempt District, such as here, a financing arrangement should not be conclusive of ownership for tax purposes." (*Id.*, at p. 870.)

The city's comparison of the city hall building in the instant case with the transmission line in *Collins* is inapt. The issue in *Collins* was the taxability of the transmission line as personal property, i.e., the taxability of the fixture. Following construction Collins Electrical Co. had no right, possessory or otherwise, in the real property. In the case at bench we are concerned with the taxability of an interest in improved real property.

The principles applied by the court in *Collins* are those established in cases involving the taxation of personal property. (See *General Dynamics Corp.* v. *County of L. A.* (1958) 51 Cal.2d 59, 67 [330 P.2d 794], and cases there cited.) In *General Dynamics*, the county contended that plaintiffs had taxable possessory interests in personal property owned by the federal government and used by General Dynamics in carrying out research for the government. The appellate court pointed out that, "No provision is made for declaring or assessing a possessory interest in tax exempt personal property." (*Id.*, at p. 65.) Consequently the question presented was "whether plaintiffs retained such an interest in any or all of the property so that they were in fact the owners for tax purposes despite the clauses in the various contracts vesting title in the United States. A title clause standing alone is not conclusive of ownership for tax purposes when it appears that the taxpayer retains the essential indicia of ownership . . . ." (*Id.*, at p. 67.)

In *General Dynamics* the appellant county, like respondent city herein, attempted to equate possessory interests in real and personal property. They claimed that there is no logical distinction and cited *De Luz Homes, Inc.* v. *County of San Diego, supra*, 45 Cal.2d 546 and *Kaiser Co.* v. *Reid* (1947) 30 Cal.2d 610 [184 P.2d 879] in support of their contention that General Dynamics had a taxable possessory interest in the personal property in their possession. The Supreme Court rejected the argument,

stating, "Although taxable [personal] property may be assessed to a mere possessor (Rev. & Tax. Code, § 405; *S. & G. Gump Co.* v. *City & County of San Francisco,* 18 Cal.2d 129, 131 [114 P.2d 346, 135 A.L.R. 595]) and such a possessor is required to file a statement of his possession (Rev. & Tax. Code, § 442), the property is assessed at 'its full cash value' (Rev. & Tax. Code, § 401) and is listed on the assessment roll as personal property and not as a possessory interest therein." *(General Dynamics Corp.* v. *County of L. A., supra,* 51 Cal.2d 59, 65.) The court emphasized that, "In construing ad valorem tax legislation . . . we cannot overlook the historical distinction between real and personal property that is reflected not only in the statutory provisions but in common understanding of what sort of interest in property is necessary to qualify as property itself within the meaning of tax statutes." *(Id.,* at pp. 65-66; see also *Kaiser Co.* v. *Reid, supra,* 30 Cal.2d 610, 618-619.)

 The real question then is whether Goldhammer acquired under the 50-year lease, and retained under the leaseback, a possessory interest in the real property and improvements "to qualify as property itself" within the concept of the tax laws.

In elaborating on the definition of "possessory interest," the Administrative Code states that "[s]uch an interest may exist as the result of: [¶] (1) A grant of a leasehold estate, an easement, a profit a prendre, or any other legal or equitable interest of less than freehold, regardless of how the interest is identified in the document by which it was created, provided the grant confers a right of possession or exclusive use which is independent, durable, and exclusive of rights held by others in the property . . . ." (Cal. Admin. Code, tit. 18, Pub. Rev., ch. 1, subch. 1, § 21.) The same section of the Administrative Code defines "possession" to include "(2) Constructive possession, which occurs when a person, although he is not in actual possession of land or improvements, has a right to possession and no person occupies the property in opposition to such right."

Goldhammer acquired the right to possession of the real property under the 50-year lease provisions. The leaseback provisions do not divest him of that right. On the contrary, they provide for the retention during the period of the lease of all the classic rights belonging to a sublessor, including the remedies available to such a sublessor against a defaulting sublessee, i.e., the right to terminate the sublease to reenter the premises,

or without terminating the sublease to reenter and relet the premises for the account of the sublessee and recovery any deficiency.

The possession by the city under the sublease is not in opposition to Goldhammer's right under the 50-year lease, but rather pursuant to and subordinate to his right. The fact that Goldhammer does not occupy the property during the period of the sublease to the city does not signify that he does not enjoy *the value* of the premises during the tenure of the sublease. In lieu of actual occupancy of the premises, he (or his assignee) receives rental under the sublease, which rental represents the value of the rented premises during the term of the lease. (*City of Palo Alto* v. *County of Santa Clara, supra,* 5 Cal.App.3d 918, 921-922.)

As the court stated in *City of Palo Alto* v. *County of Santa Clara, supra,* 5 Cal.App.3d 918, at page 922, "Any attempt to segregate and subtract the value of possessory interests leased by tax-exempt entities from nonexempt property owners or lessors would lead to a thoroughly chaotic assessment practice."

Although neither party has cited any case involving the taxability of the possessory interest created under precisely the same circumstances of lease-leaseback as that herein created, it seems clear that the taxability of such interests has been taken for granted. The Legislature certainly surmised that they were taxable in adopting Revenue and Taxation Code section 231, which provides in subdivision (a) that "Property which is owned by a nonprofit corporation and leased to, and used exclusively by, government for its interest and benefit shall be exempt from taxation within the meaning of 'charitable purposes' in subdivision (b) of Section 4 and Section 5 of Article XIII of the Constitution of the State of California . . ." and under subdivision (b) "property" is defined to include "(3) Any possessory interest of the nonprofit corporation in property and in the land upon which the property was constructed . . . ."

The above provisions, enacted specifically to provide for tax exemption in cases where governmental buildings are constructed pursuant to lease-leaseback agreements between governmental agencies and nonprofit corporations, would have been unnecessary if the leaseback to the governmental agency automatically resulted in a tax exemption on the possessory interest.

We conclude that the lease-leaseback created a taxable possessory interest in Goldhammer under California tax laws.

The judgment is reversed.

Gardner, P. J., and Kaufman, J., concurred.

On April 13, 1979, the opinion was modified to read as printed above. Respondent's petition for a hearing by the Supreme Court was denied June 14, 1979.