[No. A044619. First Dist., Div. Four. Mar. 14, 1990.]

INDUSTRIAL INDEMNITY COMPANY, Plaintiff and Appellant, v. CITY AND COUNTY OF SAN FRANCISCO, Defendant and Respondent.

## Counsel

Theodore F. Bayer, Nancy B. Ranney, Patricia Pollastrini and Rubin, Eagan & Feder for Plaintiff and Appellant.

Fred Main as Amicus Curiae on behalf of Plaintiff and Appellant.

Louise H. Renne, City Attorney, and Robin M. Reitzes, Deputy City Attorney, for Defendant and Respondent.

John K. Van de Kamp, Attorney General, Robert F. Tyler and Robert D. Milam, Deputy Attorneys General, as Amici Curiae on behalf of Defendant and Respondent.

## Opinion

**CHANNELL, J.**—In this case of first impression, we hold that a true sale and leaseback of real property—one that is not a financing transaction—constitutes a change in ownership within the meaning of Proposition 13, triggering reassessment of the property. (See Cal. Const., art. XIII A, § 2, subd. (a).)

## I. Facts

In 1984, appellant Industrial Indemnity Company owned real property and improvements at 255 California Street in San Francisco. For the 1984-1985 tax year, respondent City and County of San Francisco had assessed property taxes against this property based on a full-value assessment of $9,111,719. In November 1984, Industrial Indemnity agreed to convey fee title to the property to Resources Property Improvement Corporation, conditioned on receipt of a leaseback of the property. This lease was to be effected on the closing of title. Resources assigned its rights to purchase to Camfex Associates and assigned the remainder interest to Emily Associates. In December 1984, Industrial Indemnity sold the property to Camfex and leased it back for a period of 25 years, with five 5-year options to extend the lease.[1] Under the terms of the lease, Industrial Indemnity must pay all property taxes.

---

[1] Emily Associates owns the options to extend the lease, as well as the remainder interest in the property. Neither Emily Associates nor Resources Property Improvement Corporation is a party to this action.

In its brief, Industrial Indemnity states both that the sale and leaseback occurred *simultaneously* and that the lease was fully executed *before* the transfer of title. Not only are these ar-

For federal and state income tax purposes, Industrial Indemnity and Camfex treated the transaction as a sale. Industrial Indemnity claimed deductions for rent and other expenses; Camfex took depreciation on the building and claimed the rent paid by Industrial Indemnity as ordinary income.

In 1985, the city determined that a change in ownership of the property had occurred and reset the property's full-value assessment at $40.6 million. The city sent Camfex a supplemental tax bill for the 1984-1985 tax year, based on the new valuation. The tax bill for the 1985-1986 tax year was also based on the reassessed valuation. Acting on its own behalf and for Camfex, Industrial Indemnity applied to the city's Assessment Appeals Board for a changed assessment, to affect both the 1984-1985 supplemental tax bill and the 1985-1986 tax bill. The board reduced the full-value assessment of the property to $37,650,000, but declined to decide whether the sale and lease-back constituted a change in ownership. In 1986, the city issued corrected tax bills to reflect the board's revision.

Industrial Indemnity paid the corrected tax bills under protest. Its claim for refund filed with the city board of supervisors was denied in 1986. Industrial Indemnity, again acting on its own behalf and for Camfex, filed a complaint for refund of property taxes, without success.[2] The trial court found that the Industrial Indemnity-Camfex sale and leaseback constituted two changes in ownership, prompting reassessment. Judgment was issued, corrected, and amended nunc pro tunc. ■ ■ ■ ■ Industrial Indemnity appeals from the amended judgment.[3]

---

guments inconsistent, but they contradict the trial court's finding that the lease occurred the sale. On appeal, we are bound by the trial court's factual findings, to the extent that they are supported by substantial evidence. (*Trailer Train Co.* v. *State Bd. of Equalization* (1986) 180 Cal.App.3d 565, 588 [225 Cal.Rptr. 717].) The trial court's amended statement of decision states that these two events occurred on the same day, one after the other. The contract, providing that the lease should be effected "[u]pon the closing of title," supports the trial court's conclusion.

[2]The parties stipulated that the correct full-value assessment was $33,550,000, assuming that a change in ownership had occurred. Pursuant to this agreement, a second cause of action was dismissed with prejudice.

[3]Industrial Indemnity also purports to appeal from the amended statement of decision. This is not an appealable order. (See *Grubb & Ellis Co.* v. *Spengler* (1983) 143 Cal.App.3d 890, 892 [192 Cal.Rptr. 637] [prior law]; *Gosney* v. *State of California* (1970) 10 Cal.App.3d 921, 928 [89 Cal.Rptr. 390] [prior law]; see also Code Civ. Proc., § 904.1.) It is the judgment, not the statement of decision, that is appealable. (See *Gosney* v. *State of California, supra,* at p. 928.) However, Industrial Indemnity's appeal from the amended judgment allows us to assess the validity of the trial court's legal conclusions stated in the amended statement of decision. (See *ibid.*)

## II. DISCUSSION

### A. *Change in Ownership—Sale*

■ Industrial Indemnity contends that the city's reassessment was premature because the sale and leaseback of the California Street property did not constitute a "change in ownership" within the meaning of Proposition 13. (See Cal. Const., art. XIII A.) The city contends that the trial court correctly determined that Proposition 13's implementing statutes and regulations do not support Industrial Indemnity's claim. In addition to the briefs of the parties, we have considered amicus curiae briefs from the California Taxpayers Association and the California Chamber of Commerce supporting Industrial Indemnity's argument and from the State Board of Equalization urging us to adopt the city's position.

Proposition 13, adopted by California voters in 1978, set a maximum amount of an ad valorem tax on real property based on the full cash value of the property. (Cal. Const., art. XIII A, § 1; *Title Ins. & Trust Co.* v. *County of Riverside* (1989) 48 Cal.3d 84, 88 [255 Cal.Rptr. 670, 767 P.2d 1148].) The measure defines the term "full cash value" as (1) the county's assessed valuation of the property in the 1975-1976 tax year or (2) the appraised value of the property when purchased, when newly constructed, or when a change in ownership occurs. (Cal. Const., art. XIII A, § 2, subd. (a); see Cal. Code Regs., tit. 18, § 462, subd. (a)(1).) Although this article provides that certain transactions—none of which are relevant to our case—do not constitute a "change in ownership," this term is not affirmatively defined in the Constitution itself. (See Cal. Const., art. XIII A, § 2, subds. (d), (g), (h); *Title Ins. & Trust Co.* v. *County of Riverside, supra,* at p. 95 ; *E. Gottschalk & Co.* v. *County of Merced* (1987) 196 Cal.App.3d 1378, 1384 [242 Cal.Rptr. 526].)

Revenue and Taxation Code section 60[4] establishes a three-pronged definition for the term "change in ownership"—a transfer of a present interest in real property; a transfer of the beneficial use of the property; and a transfer of value substantially equal to the value of the fee. (See *Cal-American Income Property Fund II* v. *County of Los Angeles* (1989) 208 Cal.App.3d 109, 114 [256 Cal.Rptr. 21].) Despite Industrial Indemnity's arguments to the contrary, the subject transaction satisfies all three of these criteria. The sale of the California Street property constituted a sale of a present interest, as evidenced by Camfex's immediate right to possess the property. (See Civ. Code, § 689.) The lease's provision that the right to

---

[4] All subsequent statutory references are to the Revenue and Taxation Code unless otherwise indicated.

*physical* possession should remain with Industrial Indemnity did not transform the sale into one of a future interest, postponing possession to a future time. (See Civ. Code, § 690.) The sale transferred to Camfex the right to possess the California Street property. The new owner then leased the right of physical possession to Industrial Indemnity in exchange for its rental value. As a general rule, the use of a thing does not mean the thing itself, but that the user may enjoy, hold, occupy, or have some benefit from it. In the real estate context, the use of the property can be the rent which can be obtained for its use. (*Union Oil Co.* v. *State Bd. of Equal.* (1963) 60 Cal.2d 441, 448 [34 Cal.Rptr. 872, 386 P.2d 496], app. dism. 377 U.S. 404 [12 L.Ed.2d 495, 84 S.Ct. 1629].) That Camfex contracted by lease to accept the *financial* value of its right of possession rather than the actual, physical possession of the property does not transform a present interest in real property into a future interest.

The same logic applies to Industrial Indemnity's claim that the second prong of section 60—a transfer of beneficial use of the property—was not met because, under the lease, it continues to enjoy physical possession of the property. Camfex acquired the right to possession as a result of the sale. The lease transfers this right to Industrial Indemnity, in exchange for the value of that right. The fact that Camfex may not occupy the property during the lease period does not deprive it of its right to enjoy the *value* of its property represented by the rent. (See *City of Desert Hot Springs* v. *County of Riverside* (1979) 91 Cal.App.3d 441, 452-453 [154 Cal.Rptr. 297] [pre-Proposition 13 case]; *Ohrbach's Inc.* v. *County of Los Angeles* (1961) 190 Cal.App.2d 575, 581 [12 Cal.Rptr. 132].) The sale and leaseback constituted a transfer of the beneficial use of the property within the meaning of section 60.

The sale of the fee also transferred a value substantially equivalent to the value of the fee, thus meeting the third requirement of the statute. (See § 60.) In fact, the sale was not simply equivalent to the value of the fee—it *was* a transfer of the fee itself. The purchase agreement provided for a transfer of "fee title"; the conveyance divests Industrial Indemnity of its fee interest in the California Street property. Camfex is now the primary owner of the subject property. All three prongs of the statutory test being met, the sale constituted a change in ownership under section 60.

B. *Change in Ownership—Leaseback*

■ The leaseback for a term of 50 years (including renewal options) also constituted a change in ownership. Section 61 lists nine specific examples of a "change in ownership." Subdivision (c)(1) of section 61 provides that the creation of a leasehold interest in taxable real property for a term of 35

years or more (including renewal options) constitutes a change in ownership. This finding is also consistent with the three-pronged test of section 60. The Legislature has determined that a lease of this length, with its rights of physical possession and use of the property during the term of the lease, is the equivalent of a transfer of the fee for purposes of Proposition 13. (See *E. Gottschalk & Co. v. County of Merced, supra,* 196 Cal.App.3d at pp. 1384-1386.) The Legislature's interpretation of a "change in ownership" in section 60 and subdivision (c)(1) of section 61 have been held to be constitutional. (*Id.,* at p. 1386.)

## C. *Estate for Years*

■ Section 62 defines many specific exclusions from the term "change in ownership," including any "transfer by an instrument whose terms reserve to the transferor an estate for years . . . ." (§ 62, subd. (e).) Industrial Indemnity contends that this provision was meant to include leases such as the one it claims it reserved in the Camfex sale and leaseback. In some respects, a lease is similar to an estate for years. (See, e.g., Civ. Code, § 765; *Robinson* v. *City of Alameda* (1987) 194 Cal.App.3d 1286, 1289 [239 Cal.Rptr. 926]; see also 4 Witkin, Summary of Cal. Law (9th ed. 1987) Real Property, § 510, p. 687.) However, we must determine whether the Legislature intended to treat leases as estates for years pursuant to section 62, subdivision (e). (See *Title Ins. & Trust Co.* v. *County of Riverside, supra,* 48 Cal.3d at p. 95 [courts must determine legislative intent when construing meaning of ambiguous statutes].) Our construction of section 62, subdivision (e) must be consistent with section 60. To adopt Industrial Indemnity's argument and treat a lease as an estate for years in the context of a sale and leaseback would be inconsistent with the legislative intent of section 60, as the sale and leaseback meet all three prongs of the test set out in that provision. (See pts. A and B, *ante.*)

Even if the applicable statutes permitted us to treat leases as the equivalent of estates for years in this context, Industrial Indemnity did not satisfy the administrative requirement that it reserve to itself an estate for years. The State Board of Equalization has promulgated pertinent administrative regulations interpreting sections 60 through 69. Local assessors must follow these regulations. (See Gov. Code, § 15606, subds. (c), (h).) One regulation provides that the "creation of an estate for years for a term of 35 years or more in real property is a change in ownership at the time of transfer unless the instrument creating the estate for years reserves such estate in the transferor or the transferor's spouse. . . ." (Cal. Code Regs., tit. 18, § 462, subd. (d)(2).) Industrial Indemnity did not reserve an estate for years to itself in *any* instrument. The trial court held that the December 1984 transaction did not effect a reservation of a lease. Even if we assume arguendo

that leases and estates for years are meant to receive the same treatment under the pertinent statutes and regulations, we agree with the trial court's legal finding[5] that no reservation occurred in the subject sale and leaseback.

Under the regulation, the reservation must be made in the instrument creating the estate for years. (Cal. Code Regs., tit. 18, § 462 [hereafter rule 462], subd. (d)(2).) None of the sale and leaseback documents refer to a "reservation." Although a reservation is not synonymous with an exception, the difference between the two terms "is so slight and shadowy that in common parlance they are used interchangeably . . . ." (*Van Slyke* v. *Arrowhead etc. Power Co.* (1909) 155 Cal. 675, 679-680 [102 P. 816]; see Cal. Real Property Sales Transactions (Cont.Ed.Bar 1981) pp. 240-241.) The question of whether a particular provision is an exception or a reservation is not conclusively determined by the use of the terms alone, but depends on the intention of the parties, ascertained from the whole conveyance. (*Main* v. *Legnitto* (1964) 230 Cal.App.2d 667, 677-678 [41 Cal.Rptr. 223]; *Van Slyke* v. *Arrowhead etc. Power Co., supra*, at pp. 679-680.) Even if we deem the exceptions listed in the conveyance to be reservations and incorporate them into the instrument that created the lease, Industrial Indemnity's claim would fail, because none of those exceptions refer to the lease. Therefore, there was no reservation of a leaseback within the meaning of rule 462, subdivision (d)(2). To construe this rule and section 62, subdivision (e) otherwise would be inconsistent with section 60, as the leaseback meets all three prongs of section 60's definition of a "change in ownership."

D. *Rule 462, Subdivision (k)(4)*

The regulations also provide that a "sale of real property, coupled with a leaseback which is not reserved to the transferor by the terms of the sale instrument, constitutes a change in ownership of such property; provided however, a sale and leaseback transaction shall be rebuttably presumed to be a nonreappraisable financing transaction upon a proper written showing . . . ." (Rule 462, subd. (k)(4).)[6] On appeal, the parties dispute the meaning of this provision. Industrial Indemnity interprets the language of rule 462, subdivision (k)(4) stating that a "sale of real property, coupled with a leaseback which is *not* reserved to the transferor by the terms of the sale instrument, *constitutes* a change in ownership" to mean that the con-

---

[5]Contrary to the city's apparent assumption, the trial court's finding that there was no reservation was a finding of law. (See *Morris* v. *Atlas Assurance Co.* (1984) 158 Cal.App.3d 8, 12 [204 Cal.Rptr. 95] [interpretation of written instrument is question of law].)

[6]This regulation also provides that a sale and leaseback shall be rebuttably presumed to be a nonreappraisable financing transaction under certain circumstances. (Rule 462, subd. (k)(4).) The parties appear to agree that Industrial Indemnity's sale and leaseback was not a financing transaction.

verse is true—that a sale of real property coupled with a leaseback which *is* reserved to the transferor by the terms of the sale instrument does *not* constitute a change in ownership. The city and the State Board of Equalization counter with their own interpretation—that a true sale and leaseback, one that is not a financing transaction, constitutes a change in ownership. In the past, the State Board of Equalization has recognized that rule 462, subdivision (k)(4) has created some confusion about whether a sale and leaseback constitutes a change in ownership. Commentators have also noted this ambiguity. (See Ehrman & Flavin, Taxing Cal. Property (3d ed. 1988) § 2:16, pp. 43-44.) We agree that the language of this provision is ambiguous, requiring judicial interpretation. (See *Title Ins. & Trust Co.* v. *County of Riverside, supra,* 48 Cal.3d at p. 96 [no construction without ambiguity]; *Board of Supervisors* v. *Lonergan* (1980) 27 Cal.3d 855, 866 [167 Cal.Rptr. 820, 616 P.2d 802], cert. den. 450 U.S. 918 [67 L.Ed.2d 344, 101 S.Ct. 1362] [no construction without ambiguity]; *E. Gottschalk & Co.* v. *County of Merced, supra,* 196 Cal.App.3d at pp. 1384-1386.)

■■■ The interpretation of a statute or regulation is an issue of law. (See *New Hampshire Ins. Co.* v. *City of Madera* (1983) 144 Cal.App.3d 298, 307 [192 Cal.Rptr. 548] [statute or regulation]; *Killian* v. *City and County of San Francisco* (1978) 77 Cal.App.3d 1, 7 [143 Cal.Rptr. 430] [statute or ordinance].) Generally, the same rules of construction and interpretation that apply to statutes govern the construction and interpretation of an administrative agency's rules and regulations. (*Cal. Drive-in Restaurant Assn.* v. *Clark* (1943) 22 Cal.2d 287, 292 [140 P.2d 657, 147 A.L.R. 1028]; *Blumenfeld* v. *San Francisco Bay Conservation etc. Com.* (1974) 43 Cal.App.3d 50, 59 [117 Cal.Rptr. 327].) The aim of such construction is to determine the legislative intent so that the purpose of the statute or the regulation promulgated pursuant to the statute may be given effect. (*Title Ins. & Trust Co.* v. *County of Riverside, supra,* 48 Cal.3d at p. 95; *People* ex rel. *Younger* v. *Superior Court* (1976) 16 Cal.3d 30, 40 [127 Cal.Rptr. 122, 544 P.2d 1322].)

If two constructions appear possible, we must adopt the one that leads to the most reasonable result. (*Metropolitan Water Dist.* v. *Adams* (1948) 32 Cal.2d 620, 630-631 [197 P.2d 543]; *People* ex rel. *Riles* v. *Windsor University* (1977) 71 Cal.App.3d 326, 332 [139 Cal.Rptr. 378].) ■■■ Applying this accepted rule of construction, we find that the interpretation that Industrial Indemnity urges us to adopt would be inconsistent with the legislation under which rule 462, subdivision (k)(4) was enacted, and would therefore be unreasonable. This sale and leaseback transaction meets the statutory definition for a change in ownership set forth in section 60. (See pts. A, B, *ante.*) It appears, therefore, that the Legislature intended that such a sale

and leaseback constitute a change in ownership triggering reassessment under article XIII A. Rule 462 was promulgated pursuant to sections 60 through 69, which in turn implement article XIII A. A court must construe an administrative regulation in light of the enabling statute's intent. (*Blumenfeld* v. *San Francisco Bay Conservation etc. Com., supra*, 43 Cal.App.3d at p. 59; see *English* v. *County of Alameda* (1977) 70 Cal.App.3d 226, 233 [138 Cal.Rptr. 634].) Industrial Indemnity's construction of this rule would be contrary to the apparent legislative intent of section 60.

On the other hand, the city's interpretation of rule 462, subdivision (k)(4) *is* reasonable, as it is consistent with section 60. We may not adopt a regulatory interpretation that would violate the intent of the statute pursuant to which the regulation was promulgated. (See *People* ex rel. *Riles* v. *Windsor University, supra*, 71 Cal.App.3d at p. 333; *Blumenfeld* v. *San Francisco Bay Conservation etc. Com., supra*, 43 Cal.App.3d at p. 57 [court invalidates rule if it impairs scope of enabling statute].) We must give effect to the legislative intent even if our interpretation may appear at odds with conventional usage or the literal construction of the statutory language. (*Pollack* v. *Department of Motor Vehicles* (1985) 38 Cal.3d 367, 372 [211 Cal.Rptr. 748, 696 P.2d 141].)

Considering all these factors, we find that the city's interpretation of rule 462, subdivision (k)(4) is consistent with section 60 and is therefore the proper construction of it. Under subdivision (k)(4) of rule 462, a sale and leaseback that is not a financing transaction constitutes a change in ownership under article XIII A of the California Constitution and section 60.

Our conclusion of the proper interpretation of rule 462, subdivision (k)(4) is bolstered by the fact that it is also the interpretation given by the State Board of Equalization. █ Courts may rely on extrinsic aids such as the construction of an enactment by the administrative agency responsible for implementation of a constitutional provision to resolve ambiguities. (See *Board of Supervisors* v. *Lonergan, supra*, 27 Cal.3d at p. 866 [construction of Proposition 13].) An agency's own interpretation of its regulation is entitled to great weight, if it is consistent with its enabling statute. (*Trailer Train Co.* v. *State Bd. of Equalization, supra*, 180 Cal.App.3d 565, 590; *Blumenfeld* v. *San Francisco Bay Conservation etc. Com., supra*, 43 Cal.App.3d at pp. 57-58.) When construing article XIII A, courts accord legislative and administrative implementations great weight. (*Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 246 [149 Cal.Rptr. 239, 583 P.2d 1281]; *Sav-on Drugs, Inc.* v. *County of Orange* (1987) 190 Cal.App.3d 1611, 1617, fn. 3 [236 Cal.Rptr. 100].)

In furtherance of its contrary claim, Industrial Indemnity argues that the Legislature's unsuccessful attempt to amend section 62 to specify the effect

of a sale and leaseback confirms that the Legislature intended to exclude such transactions from reassessment. ■ However, the Legislature's failure to amend an existing statute is inconclusive and has little interpretive value. (*Title Ins. & Trust Co.* v. *County of Riverside, supra*, 48 Cal.3d at p. 97 [unanimous decision].)

### E. *Conclusion*

The basic definition of section 60 is intended as a guidepost in cases not covered by the specific inclusions or exclusions of other taxation statutes or article XIII A itself. (*Allen* v. *Sutter County Bd. of Equalization* (1983) 139 Cal.App.3d 887, 891-892 [189 Cal.Rptr. 101]; see §§ 61, subd. (c)(1), 62, subd. (e).) As we have seen, the subject sale and leaseback does not come within any other statute or regulation. Therefore, we apply the basic definition of section 60, and find that this transaction constitutes two changes in ownership within the meaning of that section. We are satisfied that this conclusion is consistent with the spirit of Proposition 13. To paraphrase the words of another appellate court, to find otherwise would open a loophole in the tax system allowing one to avoid reappraisal by merely reserving a leasehold when making a sale. "If this were allowed, owners of commercial property could effectively avoid reappraisal and place a greater tax burden on the owners of residential property. This was surely not the intent behind Proposition 13." (*E. Gottschalk & Co.* v. *County of Merced, supra*, 196 Cal.App.3d at p. 1386.) The trial court properly found that reassessment was proper and denied Industrial Indemnity's petition for refund of taxes.[7]

The judgment is affirmed.

Anderson, P. J., and Poché, J., concurred.

A petition for a rehearing was denied April 4, 1990, and appellant's petition for review by the Supreme Court was denied June 7, 1990.

---

[7] In light of our conclusion that Industrial Indemnity is not entitled to a refund, we need not address its requests for interest on the refund, reinstatement of the December 1984 assessment valuation, or remand for determination of attorney fees.