TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 97-705 |
| of | : | |
| | : | November 21, 1997 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| ANTHONY M. SUMMERS | : | |
| Deputy Attorney General | : | |
| | : | |

_____

TOM J. BORDONARO, JR., MEMBER OF THE CALIFORNIA ASSEMBLY, has requested an opinion on the following question:

Are the operations of a composting facility subject to the waste discharge requirements of the Porter-Cologne Water Quality Act as administered by a Regional Water Quality Control Board?

CONCLUSION

The operations of a composting facility are subject to the waste discharge requirements of the Porter-Cologne Water Quality Act as administered by a Regional Water Quality Control Board; however, the board may waive such requirements if the particular circumstances so warrant.

ANALYSIS

The Legislature has enacted a comprehensive statutory scheme, known as the Porter-Cologne Water Quality Act (Wat. Code, §§ 13000-14958; "Act"), **Footnote No. 1** to protect "the quality of all the waters of the state" (§ 13000). The Act is administered by the State Water Quality Control Board (§§ 13100-13176; "State Water Board") and by a Regional Water Quality Control Board (§§ 13200-13284; "Regional Water Board") in each of the regions of the state. The question presented for resolution is whether the operations of a composting facility are subject to the Act's discharge requirements as administered by a Regional Water Board. We conclude that they are.

In addressing the issues presented, we first note that compost is the product resulting from the controlled biological decomposition of organic wastes which have been separated from other solid wastes. (Pub. Resources Code, § 40116.) We are informed, for example, that at one such facility, the manufacturing process is carried out by having agricultural material placed in windrows 250 feet long, 8 to 12 feet wide, and 5 feet high. Approximately 50 windrows occupy 20 acres of land, with the material being placed directly on compacted soil. The material is mechanically turned during the composting process to

placed directly on compacted soil. The material is mechanically turned during the composting process to provide aeration and maintain appropriate internal temperatures in order to control pathogenic organisms. The final product is used as a soil amendment in agricultural operations and domestic gardening.

We also preliminarily note that a composting facility is subject to the permit requirements of an entirely separate statutory scheme, the California Integrated Waste Management Act of 1989 (Pub. Resources Code, §§ 40000-49650), administered by the California Integrated Waste Management Board (Pub. Resources Code, §§ 40400-40510; "Waste Management Board"). A person intending to operate a solid waste facility must first obtain a permit, either from a local enforcement agency or from the Waste Management Board (Pub. Resources Code, § 44001); permits issued by the former are subject to review by the latter. (Pub. Resources Code, § 44009.) A solid waste facility includes a composting facility (Pub. Resources Code, § 40194), and "solid waste" includes material which may be composted (Pub. Resources Code, § 40191).

Although the issuance of solid waste facility permits comes under the administrative purview of the Waste Management Board, the Legislature has declared that such permitting authority does not limit or affect the powers and duties of a Regional Water Board or the State Water Board. (Pub. Resources Code, § 40055.) The issuance of a permit by the Waste Management Board does not eliminate the requirement of obtaining a permit from a Regional Water Board for the same activities. (Pub. Resources Code, § 44009, subds. (b), (c).) The Legislature has attempted to ameliorate possible conflicts arising from such dual exercise of jurisdiction. Public Resources Code section 43101 provides in part:

"· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

"(c) It is . . . the intent of the Legislature, in enacting this chapter, and in making the necessary revisions to this division and Division 7 (commencing with Section 13000) of the Water Code by the act enacting this chapter, to accomplish all of the following:

"(1) . . . *the [integrated waste management] board, the state water board, and the regional water boards shall retain their appropriate statutory authority over solid waste disposal facilities and sites*. A clear and concise division of authority shall be maintained in both statute and regulation to remove all areas of overlap, duplication, and conflict between the board and the state water board and regional water boards, or between the board and any other state agency, as appropriate.

"(2) *The state water board and regional water boards shall be the sole agencies regulating the disposal and classification of solid waste for the purpose of protecting the waters of the state . .* , and the [integrated waste management] board and the certified local enforcement agencies shall regulate all other aspects of solid waste disposal within the scope of their appropriate regulatory authority.

"· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

"(d) It is the intent of the Legislature, in enacting this chapter, and in making the necessary revisions to this division and Division 7 (commencing with Section 13000) of the Water Code, to ensure that the state minimum standards for environmental protection at solid waste disposal facilities are not reduced." (Italics added.)

With the relationship between these statutory schemes in mind, we return to the question whether the operations of a composting facility are exempt from the Act's waste discharge requirements as administered by a Regional Water Board. Generally, every person discharging waste (other than into a community sewer system) that could affect the quality of the waters of the state must file a report of waste discharge with the appropriate Regional Water Board. (§ 13260, subd. (a).) The Regional Water Board is

responsible for prescribing waste discharge requirements. (§ 13263.) While compost, as an end product, typically is an innocuous, indeed beneficial, organic material, the manufacturing process of creating compost is nonetheless a method of handling and treating solid waste. **Footnote No. 2** We are informed that decomposable organic wastes may contain chemicals which could acidify affected waters or mobilize metallic pollutants from wastes or from the environment. Certain organic wastes contain high levels of nitrogen compounds that could raise levels of nitrates in surface or ground waters. Salts and microorganisms, including pathogens, may be released into the soil. In sum, the composting process presents the possibility that leachates **Footnote No. 3** may migrate into the waters of the state. While compost, once created, may not pose a threat to the waters of the state, the biological processes involved in its creation may do so.

The sole basis for the claim that the operations of the composting facility in question are exempt from the requirements of the Act is the exemption language contained in an administrative regulation, California Code of Regulations, title 27, section 20090, subdivision (h), which excludes from a Regional Water Board's jurisdiction:

> "Recycling or other use of materials salvaged from waste, or produced by waste treatment, such as scrap metal, compost, and recycled chemicals, provided that discharges of residual wastes from recycling or treatment operations to land shall be according to applicable provisions of this division."

We reject the suggestion that the manufacturing operations of a composting facility fall under the exemption language of this regulation. "Recycling," as that term is used in the regulation, refers not to the manufacturing process of creating compost; rather, it refers to the use of compost as a final product. Under the plain wording of the regulation, the compost must first be "salvaged from waste, or produced by waste treatment" before it can be subject to "[r]ecycling or other use."

> "Generally, the same rules of construction and interpretation that apply to statutes govern the construction and interpretation of an administrative agency's rules and regulations." (*Industrial Indemnity Co.* v. *City any County of San Francisco* (1990) 218 Cal.App.3d 999, 1008.) Accordingly, regulations are to be interpreted by "giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose." (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386-1387.) Here, the regulation exempts only the "use of materials salvaged from waste, or produced by waste treatment," with recycling representing one such type of use of a final product ("recycling *or other* use"). **Footnote No. 4**

Moreover, the regulation expressly requires that "discharges of residual wastes from recycling or treatment operations to land shall be according to applicable provisions of this division." It is this aspect of the composting process that the State Water Board and a Regional Water Board must regulate pursuant to the Act's provisions, monitoring and controlling the amount of leachates that might migrate into the waters of the state during the compost manufacturing process.

Although the operations of a composting facility are not exempt from the Act's waste discharge requirements, a Regional Water Board has the authority to waive such requirements "as to a specific discharge or a specific type of discharge where the waiver is not against the public interest." (§ 13269, subd. (a); see also Cal. Code Regs., tit. 27, § 20200, subd. (a)(1).) If the particular circumstances so warrant, the operators of a composting facility may obtain a waiver of the Act's requirements.

We conclude in answer to the question presented that the operations of a composting facility are subject to the waste discharge requirements of the Act as administered by a Regional Water Board; however, the Regional Water Board may waive such requirements if the particular circumstances so warrant.

* * * * *

**Footnote No. 1**

All references hereafter to the Water Code are by section number only.

**Footnote No. 2**

"Treatment" is any method, technique, or process designed to change the physical, chemical, or biological characteristics of waste so as to render it less harmful to the quality of the waters of the state. (Cal. Code Regs., tit. 27, § 20164.)

**Footnote No. 3**

A "leachate" is any liquid formed by the drainage of liquids from waste or by the percolation or flow of liquid through waste, and includes any constituents extracted from the waste and dissolved or suspended in the fluid. (Cal. Code Regs., tit. 27, § 20164.)

**Footnote No. 4**

We recognize that the term "recycling" may have different meanings in different contexts. (See Pub. Resources Code, § 40180.)